# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| BRITTANY BURK, on behalf of herself and all others similarly situated,<br><br>    *Plaintiff,*<br><br>    v.<br><br>DIRECT ENERGY, LP,<br><br>    *Defendant.* | Case No. 4:19-cv-663<br><br>**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Brittany Burk, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1.      Plaintiff brings this case against Defendant Direct Energy ("Direct") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Federal Communications Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2.      Defendant has violated the TCPA by making calls to Plaintiff's and Class Members' cellular telephones using an "artificial or prerecorded voice" and/or an "automatic telephone dialing system" ("ATDS"), without Plaintiff's and Class Members' "prior express consent" within the meaning of the TCPA. Defendant's conduct includes making such illegal debt collection calls to a Subclass of non-customers of Defendant who owe no debt to Defendant.

3.      Plaintiff therefore brings this action for injunctive relief and statutory damages to hold Defendant accountable for its illegal activities in utilizing prerecorded messages and/or

automatically dialed debt collection calls to persons who never gave their prior express consent to receive such calls.

## JURISDICTION AND VENUE

4.      This matter in controversy exceeds $5,000,000, as each member of the proposed Class and Subclass of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.    Further, Plaintiff alleges a national class, which will include at least one Class member who is a citizen of a different state.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

5.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.      This Court has personal jurisdiction over Defendant because it is a citizen of Texas and because the conduct at issue in this case occurred in, among other locations, Texas.

7.      Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

8.      Plaintiff Brittany Burk is, and at all times mentioned herein was, an individual Citizen of the State of Texas residing in the City of Mabank.

9.      Defendant Direct is a Texas utility company with its headquarters in Houston, Texas.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

10.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.      The TCPA regulates, among other things, the use of artificial or prerecorded messages and automated telephone equipment, or "autodialers."  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any

call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12. As the FCC has explained, Congress prohibited prerecorded and automated telephone calls because it considered such calls to be costly, inconvenient, and a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[1] Courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[2]

13. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[3] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[4]

14. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff, Class Members, and Subclass Members gave their prior express consent to receive a prerecorded or an autodialed call to their cellular telephones.

---

[1] *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14,014 (2003) ("*2003 FCC Declaratory Ruling*").
[2] *See, e.g., Osorio v. State FAssetCare Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).
[3] *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564-65 at ¶ 10 (2008) ("*2008 FCC Declaratory Ruling*").
[4] *Id.*

15.     The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[5]  This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, at 1053 (9th Cir. 2018) (emphasis supplied).[6]

16.     The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[7]  The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[8] A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[9] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or

---

[5] 47 U.S.C. § 227(b)(1)(A)(iii).

[6] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *2003 FCC Declaratory Ruling*, 18 FCC Rcd. 14,014, ¶ 133; *see also 2008 FCC Declaratory Ruling*, 23 F.C.C. Rcd. at 566 (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

[7] *2003 FCC Declaratory Ruling*, 18 FCC Rcd. at 14,143 n.31.

[8] *Id*. at 14,092.

[9] *2008 FCC Declaratory Ruling*, 23 FCC Rcd. 559.

come from calling lists."[10] In 2018, a decision struck down portions of a 2015 FCC Order, but "the prior FCC Orders are still binding."[11]

17.     Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA.  *See, e.g., Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet*, 679 F.3d at 638-39.

18.     The FCC's 2003 Declaratory Ruling confirmed that the TCPA's definition of a "call," for purposes of the limitations on the use of an autodialer, "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls."[12]

## FACTUAL ALLEGATIONS

19.     Defendant has conducted a wide-scale calling campaign repeatedly making unsolicited debt collection calls to the cellular telephones of persons who did not give Defendant their prior express consent to receive prerecorded and automated calls.  Defendant does not verify the accuracy of consumers' contact information or "scrub" cell phone numbers using any of the available services to comply with the TCPA.  As a result, Defendant has placed thousands of harassing debt collection calls to Class Members who never gave prior express consent and to Subclass Members who owe Defendant no debt.

---

[10] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15,391, 15,399 (2012).
[11] *Reyes v. BCA Fin. Servs., Inc.*, Case No. 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).
[12] *2003 FCC Declaratory Ruling*, 18 FCC Rcd. at 14,115.

20.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Beginning in or around December of 2018, Plaintiff began receiving numerous prerecorded messages, autodialed calls, and text messages, on her cellular phone ((XXX) XXX-8680) from Defendant. When Plaintiff did not pick up the phone, Defendant left a voicemail informing Plaintiff that she should call Defendant back regarding an electric bill.  There was at least one number that appeared in Plaintiff's caller ID for these calls: 817-601-1048. This number appears to be associated with Defendant.  For example, when this number is called, a pre-recorded message answers "Hi, you've reached Direct Energy."

22.     Plaintiff believes she has received at least to ten (10) calls from Defendant over the past couple of months.  Plaintiff can identify calls received on the following dates: December 26, 2018, December 28, 2018, and December 29, 2018.  Plaintiff received calls on other dates from Defendant.  The information concerning the exact dates and times of those other calls is within Defendant's possession.

23.     In addition, Plaintiff received various text messages from Defendant, including but not limited to, the following messages:



24.     Direct is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

25.     In receiving unwanted and unsolicited calls on her cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting

to get Defendant to stop the calls, loss of use of her cellular telephone as the calls came in, and the invasion of privacy and intrusion upon her seclusion.

26. Telephone calls placed by Defendant utilized a prerecorded message, as defined by 47 U.S.C. § 227(a)(1). Indeed, when Plaintiff answered some of the calls in order to tell Defendant to stop calling, there was no live representative on the line. Rather, Plaintiff heard a prerecorded message with a robotic voice informing Plaintiff that she was receiving this call in regards to an account purportedly serviced by Direct.

27. All telephone contact made by Direct to Plaintiff on her cellular telephone occurred via predictive dialer. The indicia that Defendant used a predictive dialer include the large volume of calls, the long pause before each call was connected, and the continued calls even after Plaintiff instructed Defendant to stop calling. These factors indicate that Defendant used an autodialer that automatically called Plaintiff from a stored list of numbers.

28. Plaintiff's telephone number called by Defendant was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

29. Plaintiff did not provide her "prior express consent" allowing Direct to place telephone calls and/or text messages to Plaintiff's cellular phone utilizing an "automatic dialing system" and/or prerecorded messages within the meaning of 47 U.S.C. § 227(b)(1)(A). Indeed, Plaintiff is not a customer and/or debtor of Direct. In fact, the prerecorded messages playing on Direct's calls appeared to be for someone other than Plaintiff – a person whom Plaintiff did not know and with whom Plaintiff had no connection whatsoever. On information and belief, the calls were intended for someone other than Plaintiff.

30. On one occasion, Plaintiff was connected with one of Defendant's representatives wherein she requested that Direct stop calling her and explained to the Direct representative that

Direct was calling the wrong number. The Direct representative assured Plaintiff this would not happen again. However, Defendant continued to call Plaintiff's cellular phone anyway.

31.     The telephone calls made to Plaintiff's cellular phone by Defendant were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

32.     The telephone calls to Plaintiff's cellular phone made by Defendant, which utilized prerecorded messages and an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

33.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided it with prior express consent within the meaning of the statute.[13]

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

35.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States to whom Defendant placed an artificial or prerecorded voice call or an automatic telephone dialing system call, and who did not provide the cellular phone number called on any initial application for Defendant's service, from four years prior to the date of this complaint through the date of class certification.

Collectively, all these persons will be referred to as "Class members."

36.     Plaintiff proposes the following Subclass definition, subject to amendment as appropriate:

---

[13] *See 2008 FCC Declaratory Ruling*, 23 FCC Rcd. at 565 ¶ 10.

> All persons in the United States to whom Defendant placed an
> artificial or prerecorded voice call or an automatic telephone
> dialing system call, who did not provide the cellular phone number
> called on any initial application for Defendant's service, and who
> never entered into any contract with Defendant, from four years
> prior to the date of this complaint through the date of class
> certification.

Collectively, all these persons will be referred to as "Subclass Members."

37.     Plaintiff represents, and is a member of, the Class and the Subclass. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

38.     Plaintiff does not know the exact number of members in the Class and Subclass, but on information and belief, the number of Class and Subclass members at minimum is in the thousands.

39.     Plaintiff and all members of the Class and Subclass have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

40.     This Class Action Complaint seeks injunctive relief and money damages.

41.     The joinder of all Class and Subclass members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits. The Class and Subclass can be identified easily through records maintained by Defendant.

42. There are well-defined, nearly identical, questions of law and fact affecting all Class and Subclass members. The questions of law and fact involving the Class and Subclass claims predominate over questions which may affect individual Class and Subclass members. Those common questions of law and fact include, but are not limited to, the following:

      a. Whether non-emergency calls made to Plaintiff and Class and Subclass members' cellular telephones used an artificial or prerecorded voice and/or an automatic telephone dialing system;

      b. Whether such calls were made by Defendant;

      c. Whether Defendant can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

      d. Whether Defendant's conduct was knowing and/or willful;

      e. Whether Defendant is liable for damages, and the amount of such damages; and

      f. Whether Defendant should be enjoined from engaging in such conduct in the future.

43. As a person who received numerous and repeated telephone calls using an automatic telephone dialing, without her prior express consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Class and Subclass member. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has no interests which are antagonistic to any member of the Class and Subclass.

44. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

45.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class and Subclass members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for the violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and prerecorded and the Class and Subclass members did not provide prior express consent, as required under the statute, to authorize such calls to their cellular telephones.

46.     Defendant has acted on grounds applicable to the Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and Subclass as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227)**

47.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

48.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227.

49.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and each member of the Class and Subclass are entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

50.     Plaintiff and all Class and Subclass members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future. Plaintiff and Class and Subclass members are also entitled to an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227)**

51.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

53.     As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff and Class and Subclass members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

54.     Plaintiff and Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future. Plaintiff and Class and Subclass members are also entitled to an award of attorneys' fees and costs

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class and Subclass members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B.      As a result of Defendant's willful and/or knowing violations of 47 U.S.C.

§ 227(b)(1), Plaintiff seeks for herself and each Class and Subclass member treble damages, as

provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.      As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for

herself and each Class and Subclass member $500 in statutory damages for each and every

violation of the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class and

Subclass;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule

of Civil Procedure 23, establishing an appropriate Class and Subclass, finding that Plaintiff is a

proper representative of the Class and any Subclass, and appointing the lawyers and law firms

representing Plaintiffs as counsel for the Class and Subclass; and

F.      Such other relief as the Court deems just and proper.

DATED:  February 25, 2019          Respectfully submitted,

**LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP**

By:  _____*/s/ Nimish R.. Desai*_____
                    Nimish R. Desai (*Attorney-in-Charge*)

**LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP**
Daniel M. Hutchinson (*pro hac vice* forthcoming)
dhutchinson@lchb.com
Nimish R. Desai (Texas Bar No. 24105238)
    (Southern District of Texas Bar No. 3370303)
ndesai@lchb.com
Evan J. Ballan (*pro hac vice* forthcoming)
eballan@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:    (415) 956-1000
Facsimile:    (415) 956-1008

**LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP**
Jonathan D. Selbin (*pro hac vice* forthcoming)
jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:     (212) 355-9500
Facsimile:       (212) 355-9592

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice* forthcoming)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiff and the Proposed Classes*