**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRITTANY BURK, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| | § | Case No. 4:19-cv-663 |
| v. | § § | |
| DIRECT ENERGY, LP, | § § | |
| Defendants | § | |

**<u>DEFENDANT DIRECT ENERGY'S OPPOSITION TO PLAINTIFF'S</u>**
**<u>MOTION TO SUBSTITUTE CLASS REPRESENTATIVE</u>**

## **TABLE OF CONTENTS**

Summary of the Argument and Statement of Issues ........................................................ 1

Factual & Procedural Background .................................................................................. 2

I.     Ms. Burk knew of the basis for her motion when she filed suit. ............................... 2

II.    The Court's deadline to amend and add parties passed in October 2019. ................. 3

III.   Direct Energy learned of Ms. Burk's criminal history shortly before her deposition,
       but Ms. Burk refused to testify on that topic. .......................................................... 4

IV.    Ms. Burk's lawyers proposed substituting in their reserve plaintiff, Ms. Young. ...... 4

V.     The Court allowed Ms. Burk to file her motion, but cautioned that her pre-motion
       submission lacked the necessary good cause. .......................................................... 6

Argument ....................................................................................................................... 7

I.     Ms. Burk's motion fails under Rule 16 and Rule 15. ............................................... 7

       A.    Rule 16: Ms. Burk has not shown good cause. ................................................ 9

             1.    Factor 1: Ms. Burk's explanation for her delay establishes that she and her
                   attorneys did not exercise diligence. ....................................................... 9

                   a.  Ms. Burk knew, and her lawyers should have known, of her criminal
                       background long before the deadline to add parties passed. ................. 9

                   b.  Ms. Burk could have timely sought to add Ms. Young as a party no
                       matter what her attorneys knew about her criminal history. .............. 13

             2.    Factor 2: The proposed substitution is of no importance to the case. ...... 15

             3.    Factors 3 and 4: Substitution at this juncture would cause enormous
                   prejudice to Direct Energy that cannot be cured with a continuance. ...... 16

       B.    Rule 15: Substitution should be denied as untimely, prejudicial, and futile. ... 20

II.    None of the other Rules cited by Ms. Burk authorizes substitution here. ................ 21

       A.    Ms. Burk must show good cause under Rule 16 no matter what. .................... 21

       B.    No Rule cited in Ms. Burk's motion authorizes the relief she seeks. .............. 22

Conclusion .................................................................................................................... 25

Certificate of Service ..................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Akpan v. United States*,
No. CV H-16-2981, 2017 WL 6527427 (S.D. Tex. Dec. 21, 2017) ............................ 16

*Arevalo v. Fid. Nat'l Fin., Inc.*,
SA-06-CA-0265-OG, 2007 WL 9712070 (W.D. Tex. Feb. 14, 2007) ..................... 8, 24

*Argo v. Woods*,
399 F. App'x 1 (5th Cir. 2010) ..................................................................... 8, 10, 13, 14

*Arvie v. Dodeka*, LLC,
No. CIV.A. H-09-1076, 2011 WL 1753489 (S.D. Tex. May 6, 2011) .................. 10, 19

*Ballan v. Upjohn Co.*,
159 F.R.D. 473 (W.D. Mich. 1994) ............................................................................ 13

*Bohn v. Pharmavite, LLC*,
No. CV1110430GHKAGRX, 2013 WL 12246336 (C.D. Cal. Oct. 18, 2013) ........... 16

*Brock v. Baker Hughes Oilfield Operations, Inc.*,
No. CIV.A. G-06-0554, 2008 WL 447502 (S.D. Tex. Feb. 19, 2008) ........................ 16

*Chavez v. Illinois State Police*,
251 F.3d 612 (7th Cir. 2001) ...................................................................................... 23

*Cody, et al. v. Allstate*,
No. 3:19-cv-01935-K (N.D. Tex.) ................................................................................ 5

*D.J. through O.W. v. Conn. State Bd. of Educ.*,
No. 3:16-CV-01197 (CSH), 2019 WL 1499377 (D. Conn. Apr. 5, 2019) .............. 8, 24

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
149 F.R.D. 55 (S.D.N.Y. 1993) ............................................................................ 22, 23

*EEOC v. Serv. Temps., Inc.*,
No. 3:08-CV-1552-D, 2009 WL 3294863 (N.D. Tex. Oct. 13, 2009) ......................... 9

*EEOC v. Serv. Temps., Inc.*,
679 F.3d 323 (5th Cir. 2012) ....................................................................................... 9

*Gordillio v. States Marine Lines*,
13 F.R.D. 445 (S.D. Cal. 1952) ................................................................................. 22

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2010 WL 3743532 (N.D. Cal. Sept. 17, 2010) ....................... 22

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MC-2543 (JMF), 2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017) ...................... 8

*In re Motor Fuel Temperature Sales Practices Litig.*,
No. 07-MD-1840-KHV, 2009 WL 3122501 (D. Kan. Sept. 24, 2009) ................... 8, 12

*In re Neopharm, Inc. Sec. Litig.*,
No. 02 C 2976, 2004 WL 742084 (N.D. Ill. Apr. 7, 2004).......................................... 23

*In re Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005) ............................................... 17, 18, 24, 25

*Kent v. Wal-Mart Stores Tx., Inc.*,
NO. 3:17-CV-211, 2018 WL 953348 (S.D. Tex. Feb. 20, 2018) ................................ 20

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir. 1987)..............................................................................24, 25

*Larry James Oldsmobile-Pontiac-GMC Truck Co. Inc. v. Gen. Motors Corp.*,
175 F.R.D. 234 (N.D. Miss. 1997) .................................................................................. 8

*Lavender v. Driveline Retail Merch., Inc.*,
No. 3:18-CV-2097, 2019 WL 4237848 (C.D. Ill. Sept. 6, 2019) ............................ 8, 12

*Lindsey v. Ocwen Loan Servicing, LLC*,
No. 3:10-CV-967-L, 2011 WL 2550833 (N.D. Tex. June 27, 2011) ........................... 14

*McCombs v. Allwaste Recovery Sys., Inc.*,
No. CIV.A. 3:98-CV-0489D, 1999 WL 102816 (N.D. Tex. Feb. 24, 1999)...... 9, 11, 21

*Miss. Prot. & Advocacy Sys., Inc. v. Cotten*,
929 F.2d 1054 (5th Cir. 1991)......................................................................................... 8

*Phillips v. Ford Motor Co.*,
435 F.3d 785 (7th Cir. 2006)........................................................................................... 8

*Randle v. Metro. Transit Auth. of Harris Cty.*,
No. CV H-18-1770, 2019 WL 1866377 (S.D. Tex. Apr. 25, 2019) ............................... 7

*Raquedan v. Centerplate of Del., Inc.*,
No. 17-CV-03828-LHK, Dkt. 31 (N.D. Cal. Jan. 23, 2018)..................................... 8, 12

*Ruiz v. Univ. of Texas M.D. Anderson Cancer Ctr.*,
291 F.R.D. 170 (S.D. Tex. 2013) .................................................................................. 18

*S&W Enterprises v. Southtrust Bank of Alabama*,
315 F.3d 533 (5th Cir. 2003).......................................................................................... 11

*Sable Commc'ns of California Inc. v. Pac. Tel. & Tel. Co.*,
890 F.2d 184 (9th Cir. 1989)....................................................................................22, 23

*Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998)........................................................................................ 8

*U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*,
816 F.3d 315 (5th Cir. 2016)............................................................................................ 9

iv

*United States v. City of Jackson, Miss.*,
    519 F.2d 1147 (5th Cir. 1975) .................................................................. 23

*Watson v. Employers Liability Assur. Corp.*,
    202 F.2d 407 (5th Cir. 1953) .................................................................... 22

*Watson v. Employers Liability Assur. Corp.*,
    348 U.S. 66, 75 S. Ct. 166, 99 L. Ed. 74 (1954) ...................................... 22

*Westefer v. Snyder*,
    No. CIV. 00-162-GPM, 2011 WL 766188 (S.D. Ill. Feb. 25, 2011) ........... 24

*Williams v. Balcor Pension Invs.*,
    150 F.R.D. 109 (N.D. Ill. 1993) ................................................................ 13

**Other Authorities**

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
Procedure § 1799) ........................................................................................... 24

**Rules**

Fed. R. Civ. P. 11 ............................................................................................. 12

Fed. R. Civ. P. 15 ............................................................................................... 8

Fed. R. Civ. P. 16 ............................................................................................... 8

Fed. R. Civ. P. 21 ............................................................................................. 22

Fed. R. Civ. P. 23 ............................................................................................. 24

Fed. R. Civ. P. 24 ............................................................................................. 24

## SUMMARY OF THE ARGUMENT AND STATEMENT OF ISSUES

Plaintiff Brittany Burk's untimely motion to substitute must be denied. Ms. Burk claims neither she nor her attorneys should have known of her inadequacy as a class representative before Direct Energy deposed her. That is just not true. Ms. Burk knew about her criminal record when she filed this case—a record of charges dating back to 2011, including a felony charge in 2014 and an arrest in 2018. And her attorneys would have known about those charges had they done minimal pre-suit investigation or vetting. Indeed, Direct Energy discovered them by simply Googling Ms. Burk's full name. That Ms. Burk's criminal history took her attorneys by surprise years after they filed suit is not good cause to belatedly replace her with a back-up plaintiff they have long been holding in reserve.

Rather than act diligently to substitute or add another plaintiff, Ms. Burk waited until sixteen months after the scheduling order's deadline to amend or add parties. Because that deadline has long expired, the threshold question is whether Ms. Burk has shown good cause under Rule 16 for the untimely addition of a party. To make that showing, Ms. Burk must establish that she could not, in the exercise of reasonable diligence, have sought substitution before the October 1, 2019 deadline. She cannot do so.

The Court already told Ms. Burk that the reasons for substitution described in her pre-motion letter did not establish good cause. Her motion does no better—in fact, it confirms the Court's prior assessment. Ms. Burk, of course, always knew of her criminal past. And it is now clear her attorneys have had their proposed substitute, Ellen Young, on standby for quite a while. So, there was plainly no barrier to timely seeking substitution. And while Ms. Burk's lawyers say **they** did not know of Ms. Burk's criminal conduct

1

before the deadline, they do not deny they **_would have known_** had they acted diligently. The ease with which Direct Energy's counsel found Ms. Burk's criminal history online proves this point: even the most cursory investigation would have revealed the information that prompted their motion. So, by claiming ignorance of Ms. Burk's criminal history, Ms. Burk's attorneys have confessed their lack of diligence. Additionally, allowing Ms. Young to join now would necessarily prejudice Direct Energy—a result that could have been avoided had Ms. Burk timely moved. So, all considerations relevant to Rule 16's good-cause inquiry point in the same direction: Ms. Burk's motion must be denied.

Ms. Burk tries to get around her lack of good cause by citing Rules 21, 23, and 24. That approach fails on three levels. First, those Rules are inapplicable here. The overwhelming weight of **_her own authority_** establishes that a motion like hers must be decided as a motion to amend her complaint under Rule 15 and, if applicable (as here), a motion to amend the scheduling order under Rule 16. Second, Ms. Burk's citation to Rules 21, 23, and 24 does not make Rule 16's good cause requirement disappear. Rule 16 applies with full force to motions that seek to add parties out of time under those Rules or any others. And third, Rules 21, 23, and 24 simply do not authorize the relief Ms. Burk seeks, and Ms. Burk could not meet their standards even if they applied (and even if she could clear Rule 16's threshold requirement). Ms. Burk's motion must be denied under any Rule.

F<span style="font-variant:small-caps">ACTUAL</span> & P<span style="font-variant:small-caps">ROCEDURAL</span> B<span style="font-variant:small-caps">ACKGROUND</span>

**I.**    **Ms. Burk knew of the basis for her motion when she filed suit.**

Ms. Burk filed suit on February 25, 2019. *See* Doc. 1. In the eight preceding years, she faced at least nine criminal charges and went to jail at least six times. *See* Ex. 1-A.

2

Obviously, she knew of this history when she filed, including all four arrests that were discussed at her first deposition—the same arrests that prompted her attorneys to raise the possibility of substitution. *See* Ex. 1-B, Burk Dep. 135:10–136:25, 140:14–18.[1]

Ms. Burk's lawyers say they were unaware of her criminal history before she testified to it in November 2020. But they do not say that they ever investigated her background or tried to determine whether she had a criminal history, either before or after filing this case. In other words, while Ms. Burk's lawyers say they were ignorant of Ms. Burk's criminal history, they do not say why. Similarly, they do not say they ever explained to Ms. Burk that serving as a class representative would subject her to discovery into matters that she might consider personal. Nor do they indicate they asked Ms. Burk if there were aspects of her background she might be uncomfortable about. Those conversations apparently never occurred. If they had, Ms. Burk and her attorneys would have uncovered the basis for her motion to substitute before this case was even filed.

## II.   The Court's deadline to amend and add parties passed in October 2019.

At the outset of the case, the Court entered a scheduling order that set October 1, 2019 as the deadline for "amendments to pleadings and addition of new parties." Doc. 19.

Since then, Direct Energy has spent an enormous amount of time and money defending against Ms. Burk's claim. Discovery has been particularly demanding because her case challenges calls made by subcontractors of Total Marketing Concepts ("TMC"), which has necessitated extensive third-party discovery. The difficulties of obtaining

---

[1] Ms. Burk's attorneys admittedly did not know about her 2020 charges when they filed their pre-motion letter about substitution. Doc. 98 at ¶ 22.

discovery from TMC and its vendors spawned a number of disputes and required Direct Energy to file a preliminary injunction motion on December 27, 2019. Direct Energy also filed third-party claims against TMC before the deadline to add parties. *See* Doc. 24.[2]

These discovery complexities prompted ten Court conferences,[3] more than a dozen letters or status reports to the Court,[4] and four modifications to the scheduling order and trial settings.[5] At no point did Ms. Burk raise the possibility of needing to add a named plaintiff or to extend the deadline to amend and add parties.

### III.   Direct Energy learned of Ms. Burk's criminal history shortly before her deposition, but Ms. Burk refused to testify on that topic.

On November 15, 2020, Direct Energy's counsel Googled Ms. Burk's name in preparation for her deposition. *See* Matthews Decl. ¶ 3. That search showed several pre-suit arrests and prompted an investigation into her background. *See id.* Two days later, Direct Energy deposed Ms. Burk and asked her questions about past crimes, including arrests that occurred in 2011, 2013, and 2014. *See* Burk Dep. 114:21–125:21, 132:16–140:20.[6] Ms. Burk refused to answer most of questions about her criminal history. *See id.*

### IV.   Ms. Burk's lawyers proposed substituting in their reserve plaintiff, Ms. Young.

Shortly after Ms. Burk's deposition, her attorneys contacted Direct Energy to ask

---

[2] To complicate matters more, TMC declared bankruptcy halfway through the deposition of its corporate representative. *See* Dec. 9 Tr. at 23:19–24:13; Ex. 1-C, Dorko Dep. at 10:4–8.

[3] *See* Sept. 3, 2019 Minute Entry; Docs. 38, 39, 45, 47, 50, 56, 59, 62, 76.

[4] *See* Docs. 20, 22, 35, 44, 48, 51, 53, 61, 65, 69, 70, 72, 74, 75, 77.

[5] *See* Docs. 29, 54, 59, 78; Doc. 19 at ¶ 7 (Dec. 2020 trial setting); Doc. 68 at ¶ 15 (Feb./Mar. 2021 setting); Doc. 71 at ¶ 14 (June 2021); Doc. 93 at 2 (Aug. 2021).

[6] Direct Energy did not ask Ms. Burk about any pending charges, which Direct Energy's counsel was unaware of at the time.

for "consent to add a party (Ms. Ellen Young) or, in the alternative, substitute the class representative." Doc. 98 at ¶ 17. Ms. Burk's attorneys say they made this request because "[Ms. Burk] does not want her unrelated criminal background to be a distraction." Doc. 98 at ¶ 18. That distraction does not seem to actually concern Ms. Burk though.[7] She has not said so in an affidavit or in any of her three depositions. In fact, her sworn declaration attached to the class certification motion—filed the same day as her substitution pre-motion letter—suggests she wants to keep pursuing her claims: "I am prepared to serve as class representative in this case and I am committed to protecting the interests of class members." Doc. 85-4 at A1758. Plainly, it is Ms. Burk's counsel, not Ms. Burk, who want substitution. They know she is an inadequate class representative. But Ms. Burk's claim is the only one pending. If she no longer wants to pursue it, she can simply dismiss.

Ms. Burk's lawyers do not explain how they were able to identify a substitute plaintiff so quickly. But the Court already recognized the only plausible explanation—they knew about Ms. Young for some time and simply decided not to add her sooner:

> [T]he other class representative you're thinking about joining at this point, **this isn't somebody who just popped up.** Everybody knows about Ms. Young. **She could have been added at any time** if you thought the current Plaintiff wasn't appropriate.

Ex. 1-D, Dec. 9 Tr. at 5:13–17 (emphasis added). Ms. Burk's attorneys did not dispute the Court's statements during the conference or in her motion. Moreover, the timing of Ms. Young's claim strongly suggests she did not just recently surface. If she was contacted by

---

[7] If it did, one would expert her to have asked the attorneys representing her in another class action she was pursuing in the Northern District of Texas to move for substitution in that case too. *See Cody, et al. v. Allstate*, No. 3:19-cv-01935-K (N.D. Tex.).

Direct Energy "[b]eginning in or around March of 2019," Doc. 85-4 at A1761, it is thoroughly implausible to think she waited until after the October 2019 deadline (much less after Ms. Burk's November 2020 deposition) to contact counsel.

## V.    The Court allowed Ms. Burk to file her motion, but cautioned that her pre-motion submission lacked the necessary good cause.

Direct Energy could not agree to untimely substitution because of the massive prejudice it would suffer from changing plaintiffs at this stage. The parties therefore filed pre-motion letters. *See* Docs. 86, 89. The Court held a conference and gave Ms. Burk an extraordinary level of guidance as to the standard she would need to meet, beginning with a citation to the relevant Rules (16 and 15)[8] and a warning that substitution was not warranted based on her pre-motion submission:

> [T]he problem is is that the deadline for amending the pleadings and adding parties has passed; and from reading all the materials **under Rules 15 and 16, there's no good cause to amend the complaint to add an additional Plaintiff** at this point in time.

Dec. 9 Tr. at 3:23–4:2 (emphasis added). The Court also rejected Ms. Burk's attempt to blame Direct Energy for her lawyers' unawareness of her criminal history:

> It wasn't Mr. Matthews' or the Defendant's responsibility to tell you that. You should have been telling them about the Plaintiff's qualifications to serve as a class representative[.]

*Id.* at 4:8–11. The Court then repeated both points for emphasis:

> Rules 15 and 16 govern the amendment of the docket control order to add parties. That date has passed, and you have to show good cause. . . . [Good cause

---

[8] Not only did the Court highlight that Rules 16 and 15 would govern, but it also cautioned that Rule 21 is inapplicable on these facts. *See* Dec. 9 Tr. at 15:1–7.

```
has] got to be not a mistake, and it's got to be
excusable neglect.
                         * * *
But honestly, if this is everything that you guys
are going to present to me, there's no sandbagging
by the Defendants; and the Plaintiff - it's your
Plaintiff. You know, it's sort of like you dance
with who you brought -- who you brought to the dance.
```

*Id.* at 4:14–5:10. Ms. Burk did not heed the Court's guidance. Instead, she did the opposite, filing a motion that barely mentions Rule 16's good-cause standard and offers no excuse for her delay beyond those that the Court already found lacking.

<u>**ARGUMENT**</u>

Despite the Court's clear instruction to file her motion under Rules 15 and 16, Ms. Burk chose to frame her motion around a jumble of "five procedural mechanisms"—three of which are entirely irrelevant. Doc. 97 at 4–5. Because "Rules 15 and 16 [are] what governs here," Dec. 9 Tr. at 4:11–13, Direct Energy first explains why Ms. Burk's motion should be denied under those applicable Rules in Part I before addressing the flaws with her other three "procedural mechanisms" in Part II.

**I.    Ms. Burk's motion fails under Rule 16 and Rule 15.**

A motion to substitute a new class representative must be analyzed as a motion for leave to amend the complaint under Rule 15. *See Randle v. Metro. Transit Auth. of Harris Cty.*, No. CV H-18-1770, 2019 WL 1866377, at *2 (S.D. Tex. Apr. 25, 2019). All of the procedurally analogous cases cited in Ms. Burk's motion—including the *Lavender*

decision she touts—agree on this point.[9] Moreover, where as here, a scheduling order's deadline to amend and add parties has passed, a showing of "good cause under Rule 16(b)" is first required because considering "Rule 15(a) without regard to Rule 16(b) . . . would render scheduling orders meaningless and effectively would read Rule 16(b) . . . out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). As such, whether Ms. Burk has shown good cause is a threshold issue.[10]

Rule 16 imposes a "fairly stringent" standard that requires a movant "to give a persuasive reason why the dates originally set by the scheduling order . . .  could not 'reasonably be met despite the diligence of the party seeking the extension.'" *Argo v. Woods*, 399 F. App'x 1, 3 (5th Cir. 2010) (quoting Fed. R. Civ. P. 16(b) advisory committee's note (1983)). "The absence of prejudice to the nonmovant and mere inadvertence on the part of the movant are insufficient to demonstrate 'good cause.'" *McCombs v. Allwaste Recovery Sys., Inc.*, No. CIV.A. 3:98-CV-0489D, 1999 WL 102816,

---

[9] *Lavender v. Driveline Retail Merch., Inc.*, No. 3:18-CV-2097, 2019 WL 4237848, at *2 (C.D. Ill. Sept. 6, 2019) (analyzing substitution motion as a motion to amend under Rule 15); *Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1058 (5th Cir. 1991) (same); *D.J. through O.W. v. Conn. State Bd. of Educ.*, No. 3:16-CV-01197 (CSH), 2019 WL 1499377, at *4 (D. Conn. Apr. 5, 2019); *Raquedan v. Centerplate of Del., Inc.*, No. 17-CV-03828-LHK, Dkt. 31 (N.D. Cal. Jan. 23, 2018) (same); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2017 WL 5504531, at *2 (S.D.N.Y. Nov. 15, 2017) (same); *In re Motor Fuel Temperature Sales Practices Litig.,* No. 07-MD-1840-KHV, 2009 WL 3122501, at *1 (D. Kan. Sept. 24, 2009) (same); *Arevalo v. Fid. Nat'l Fin., Inc.*, SA-06-CA-0265-OG, 2007 WL 9712070, at *2 (W.D. Tex. Feb. 14, 2007) (same); *see also Phillips v. Ford Motor Co.*, 435 F.3d 785, 786 (7th Cir. 2006) (examining jurisdiction after class plaintiffs were properly substituted by amendments); *Larry James Oldsmobile-Pontiac-GMC Truck Co. Inc. v. Gen. Motors Corp.*, 175 F.R.D. 234, 239 (N.D. Miss. 1997) (citing Fifth Circuit cases recognizing Rule 15 as a basis for substitution).

[10] As discussed in Argument Part II.A, Rule 16's good cause standard also applies to the other three "procedural mechanisms" Ms. Burk tries to invoke: Rules 21, 23, and 24.

at *2 (N.D. Tex. Feb. 24, 1999).

### A. Rule 16: Ms. Burk has not shown good cause.

In assessing whether good cause has been shown, the Fifth Circuit instructs courts to consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 n. 26 (5th Cir. 2016). This analysis is "holistic[]," and courts do "not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps., Inc.*, No. 3:08-CV-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

In this case the analysis is simple. No matter how the factors are balanced, they all point in the same direction: Ms. Burk has not shown good cause to excuse her delay.

### 1. Factor 1: Ms. Burk's explanation for her delay establishes that she and her attorneys did not exercise diligence.

Ms. Burk's explanation for her extraordinary delay weighs against a finding of good cause because she: (a) shows that she knew, and that her attorneys should have known, of the grounds for her motion long before the deadline to add parties passed, and (b) offers no legitimate reason that she could not have moved to add Ms. Young sooner.

> *a. Ms. Burk knew, and her lawyers should have known, of her criminal background long before the deadline to add parties passed.*

Ms. Burk offers only one excuse for her failure to comply with the scheduling order's deadline: "Direct Energy's challenge to Ms. Burk's adequacy involves allegations of criminal conduct occurring in 2020," so her lawyers "could not have known[] of this

issue in October 2019." Doc. 97 at 9. This excuse rests on the false premise that Ms. Burk did not have grounds to seek substitution until her lawyers learned of her 2020 conduct. That is obviously not true based on Ms. Burk's own evidence, which shows her lawyers **actually did** seek substitution before learning of her 2020 arrests.

Ms. Burk's lawyer admits he did not learn of Ms. Burk's 2020 conduct until **after** he decided substitution was necessary, **after** he asked Direct Energy to agree to substitution, and **after** he filed a pre-motion letter and saw Direct Energy's response. *See* Doc. 98 at ¶¶ 17–22. Thus, it was not only possible for Ms. Burk to move for substitution before her attorneys knew about her pending charges, but **that is in fact what happened**. When a party knows or should know of the basis for a motion, additional grounds that arise later do not create good cause for delay under Rule 16. *See Arvie v. Dodeka*, LLC, No. CIV.A. H-09-1076, 2011 WL 1753489, at *2 (S.D. Tex. May 6, 2011) (Rosenthal, J.) (rejecting a party's supposed lack of "necessary discovery" as an excuse for an untimely motion when the party did not also show that "he could not move [] before he had received" that discovery). Here, the timing of Ms. Burk's request shows that her pre-suit criminal history was enough to spark her motion to substitute. *See* Burk Dep. 134:2–10, 140:14–18. So, Ms. Burk must provide a "persuasive reason" that her attorneys could not have learned of **that conduct**—not her 2020 conduct—and moved to substitute before the deadline to amend and add parties. *Argo*, 399 F. App'x at 1, 3. She does not even try.

Instead, Ms. Burk attempts to shift the analysis by asserting that her attorneys **did not** know of her criminal history. That approach is woefully insufficient. Under Rule 16, the question is not whether Ms. Burk's attorneys **did** discover their client's criminal

10

background, but whether her background is something they "*could have* discovered . . . by exercising reasonable diligence." *See McCombs*, 1999 WL 102816, at *2. Absent any argument that Ms. Burk's attorneys *could not have* discovered her criminal history, her proffered excuse that they simply did not know amounts to a claim of "inadvertence." *S&W Enterprises v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). Under Rule 16, such an explanation "is tantamount to no explanation at all." *Id*.

Framed correctly, Ms. Burk cannot show good cause for her delay. She of course knew of her criminal conduct before she filed suit, and her attorneys cannot credibly dispute that they would have learned of her criminal background by exercising any diligence at all. The matter should have come up in conversations that took place "[l]ong before the deadline for adding parties—indeed, at the initial client interview." *See McCombs*, 1999 WL 102816, at *2. And even absent such conversations, Ms. Burk's attorneys still would have learned of Ms. Burk's criminal conduct with even the barest level of diligence—all they had to do was type "Brittany Louise Burk" into Google.[11] Indeed, every piece of information about Ms. Burk's criminal history listed in Exhibit 1-A is publicly available. So, Ms. Burk's attorneys' professed ignorance of her criminal history cannot satisfy Rule 16's good cause standard. Quite the opposite, it shows a lack of diligence because they would have known of her criminal history "by exercising reasonable diligence in preparing to file this lawsuit." *McCombs*, 1999 WL 102816, at *2.

---

[11] Ex. 1, Matthews Decl. ¶ 3 (explaining that Direct Energy's counsel found Ms. Burk's arrest history by Googling her name); *see also* http://google.com (type "Brittany Louise Burk" into the search bar, with or without quotations).

Nor does any of Ms. Burk's authority suggest otherwise. Indeed, the *Lavender* and *Raquedan* decisions she heavily relies on were both decided under Rule 15 only because the schedule was not implicated, so those courts did not even attempt to decide whether good cause existed under Rule 16. *See Lavender*, 2019 WL 4237848, at *3 (declining to consider Rule 16's good-cause standard because defendant waived the issue); *Raquedan*, No. 17-CV-03828-LHK at 3 (same because motion to amend was timely filed). Those cases provide no support for Ms. Burk's assertion that her attorneys' ignorance of her criminal conduct constitutes good cause to amend the scheduling order. And the lone Rule 16 case that Ms. Burk cites underscores what is lacking here. The court in *In re Motor Fuel* found good cause to permit an untimely substitution based on evidence that counsel had diligently investigated the charges pending against the named plaintiff and reasonably concluded that those charges did not pose an adequacy problem until after the deadline to add parties had passed. *See In re Motor Fuel*, 2009 WL 3122501, at *1. Here, by contrast, Ms. Burk's failure to timely move was not part of a reasonable analysis of her criminal conduct and its potential impact on the case. Rather, it was based on inexcusable ignorance of that conduct.

Similarly, Ms. Burk's contention that her attorneys acted diligently by serving a request for production on Direct Energy is misplaced for two reasons. The main problem is that Ms. Burk has the burden to prove her adequacy as a class representative, *see* Class Cert. Opp'n at Part V.C, so her lawyers should have independently investigated her adequacy and uncovered any obvious challenges long before Direct Energy did. *See* Fed. R. Civ. P. 11(b) (requiring "an inquiry reasonable under the circumstances" before making any factual or legal claims in a pleading or motion); *see also* Doc. 1 at ¶ 43 (alleging that

Ms. Burk "will . . . adequately represent and protect the interests of the Class and Subclass"). Indeed, other courts have held that the "failure to make a reasonable pre-filing investigation of proposed class representatives is sufficient to find counsel inadequate." *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 489 (W.D. Mich. 1994) (citing *Williams v. Balcor Pension Invs.*, 150 F.R.D. 109 (N.D. Ill. 1993)). A secondary but more practical problem has to do with timing. As the Court has already stated, Direct Energy was under no obligation to investigate Ms. Burk's adequacy before the deadline to add parties passed— only Ms. Burk and her attorneys had that burden. *See* Dec. 9 Tr. at 4:8–11. Ms. Burk cannot sit idly by and count on Direct Energy to uncover her inadequacy because an adequacy challenge should always be anticipated. The decision of Ms. Burk's attorneys to simply assume they could prove adequacy unless Direct Energy told them otherwise displays an inexcusable lack of diligence. Diligence required them to conduct their own investigation before they filed suit, and certainly before the deadline to add parties had passed.

    b.  *Ms. Burk could have timely sought to add Ms. Young as a party no matter what her attorneys knew about her criminal history.*

   Even if Ms. Burk's attorneys could justify their failure to investigate her criminal background, good cause is still lacking. Under Rule 16, the key question is whether Ms. Burk could have timely moved to add Ms. Young as a party. *Argo*, 399 F. App'x at 1, 3. Ms. Burk's motion seems to assume she could not have substituted Ms. Young before her attorneys knew of her criminal history. They do not, however, justify that assumption.

   As Ms. Burk's class certification evidence shows, Ms. Young's claim allegedly accrued within a month of suit being filed. *See* Doc. 85-4 at A1761. So, there was obviously

13

no barrier to her being joined before the deadline to add parties passed. Had this action been taken timely, Ms. Young could have more easily been added by amendment as a matter of right or with leave granted under Rule 15's more permissive standard.[12]

Ms. Burk may respond that she technically could have moved to add Ms. Young by the deadline to add parties, but she did not have any reason to do so at the time. However, that was a matter of strategic judgment, not an inability to meet the deadline. Even if Ms. Burk's attorneys did not specifically know about their client's criminal history (they should have for reasons already discussed), a diligent lawyer would have at least entertained the possibility of an adequacy challenge to a single named plaintiff in a putative class action. The diligent course would have been to timely add Ms. Young to hedge against the risk of an unforeseen problem with Ms. Burk. Instead, her lawyers strategically discounted that risk and decided to proceed with a lone plaintiff; the problem they face now is one of their own making. *See Lindsey v. Ocwen Loan Servicing, LLC*, No. 3:10-CV-967-L, 2011 WL 2550833, at *5 (N.D. Tex. June 27, 2011) (declining to extend pretrial deadlines where "the posture of this case is one of Plaintiff's own making").

Nor can Ms. Burk point to the record's silence as to the date when Ms. Young learned of her claim or contacted Ms. Burk's lawyers to establish good cause. As the party seeking relief under Rule 16, Ms. Burk has the burden to give a "persuasive reason" for why she could not timely move to substitute Ms. Young. *Argo*, 399 F. App'x at 1, 3. Direct

---

[12] Ms. Young can no longer be added under Rule 15 because her request is untimely and prejudicial, and her claims are now futile. *See infra* Argument Part I.B.

Energy does not have to prove the opposite. Ms. Burk's failure to offer any evidence as to when her attorneys first connected with Ms. Young precludes a finding good cause.

### 2. Factor 2: The proposed substitution is of no importance to the case.

Ms. Burk cannot contend that substitution is important to her own case. Indeed, the relief she seeks proves the opposite. Ms. Burk asks only for substitution, which would put an end to this case altogether as far as her individual claim is concerned.

The proposed substitution is not important to Ms. Young or the putative class either. As Ms. Burk admits, Ms. Young is free to file her own case—and so may any other putative class member. Dec. 9 Tr. at 6:23–24. If Ms. Young has any viable claims (she does not), those claims will be just as viable in a separate case as they would be here. There are no limitations, res judicata, or collateral estoppel concerns. Thus, whatever interest Ms. Young might have, it is not important that she pursue it in ***this*** case.

On the latter point, Ms. Burk argues that Ms. Young's ability to "start anew in another lawsuit" somehow weighs in favor of letting her derail the schedule in this one. Doc. 97 at 10. She has it backwards. As another district court facing a similarly untimely and prejudicial amendment explained, accepting a proposed plaintiff's ability to file her own lawsuit as good cause would essentially nullify Rule 16:

> Although the practical reality is that [proposed plaintiff] will likely file a new action should we deny this Motion, possibly resulting in duplicative litigation, this is an insufficient reason for finding good cause under Rule 16(b) absent a showing of diligence by the moving party. **A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. If judicial economy concerns alone were enough to establish good cause, Rule 16(b) would largely become a nullity**. Accordingly, although Plaintiff's counsel remains free to file a new case on behalf of [proposed plaintiff], the Court will not

15

permit amendments that amount to a "back-door attempt to begin the action anew" where, in all likelihood, the original plaintiff was never qualified to represent the class.

*Bohn v. Pharmavite, LLC*, No. CV1110430GHKAGRX, 2013 WL 12246336, at *3 (C.D. Cal. Oct. 18, 2013) (quotations and citations omitted) (emphasis added). So too here. If Ms. Young can pursue her individual and class claims in a different case, that only goes to show that her participation is of no importance to this one. To hold otherwise would nullify Rule 16's good cause requirement altogether.

### 3. Factors 3 and 4: Substitution at this juncture would cause enormous prejudice to Direct Energy that cannot be cured with a continuance.

The prejudice inquiry in this case is decidedly lopsided against Ms. Burk. When analyzing potential prejudice from an untimely amendment, prejudice to the nonmovant weighs against modification of the scheduling order. *See Akpan v. United States*, No. CV H-16-2981, 2017 WL 6527427, at *3 (S.D. Tex. Dec. 21, 2017) (Atlas, J.) (declining to find good cause when extension of a deadline would cause "significant" prejudice to a nonmovant). The opposite is not necessarily true, however. "The absence of prejudice to the nonmovant . . . does not satisfy the 'good cause' requirement of Rule 16(b)." *Brock v. Baker Hughes Oilfield Operations, Inc.*, No. CIV.A. G-06-0554, 2008 WL 447502, at *2 (S.D. Tex. Feb. 19, 2008) (Rosenthal, J.). Thus, even if Ms. Burk could support her bare assertion that "substitution will cause no prejudice," Doc. 97 at 10, that would not be enough to establish good cause as is her burden. *Id.*

The bigger problem with Ms. Burk's prejudice argument, however, is that she ignores the immense prejudice Direct Energy would suffer if Ms. Young is belatedly substituted. That prejudice can generally be addressed in three categories.

16

First, Ms. Burk insisted on proceeding with her motion for class certification before the Court rules on substitution. Direct Energy repeatedly tried to dissuade her from taking this approach—arguing in meet-and-confer emails, in its pre-motion letter, and in the pre-motion conference that Ms. Burk's approach would cause tremendous prejudice and that it was in all parties' (and the Court's) interest to determine who the named plaintiff would be before briefing class certification. Still, she insisted on proceeding in parallel. This means that Direct Energy has been forced to expend time and resources (i) taking three separate depositions of Ms. Burk, two of which required Court intervention, *see* Dec. 9 Tr. at 21:4–22:7; Ex. 1-E, Dec. 21 Tr. at 3:19–4:8, (ii) investigating Ms. Burk's background and briefing issues unique to her (including this brief and the adequacy and typicality sections of Direct Energy's class certification opposition), and (iii) retaining and working with an expert who can testify with respect to issues that are peculiar to Ms. Burk. If Ms. Burk had timely sought substitution, Direct Energy would not have incurred any of these expenses. If substitution is allowed at this juncture, all of it will be wasted and the parties will necessarily have to brief class certification all over again. *See In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 346 (D. Mass. 2005) (recognizing the prejudice of switching class representatives after parties had engaged in "intensive and expensive litigation to resolve the issue of whether [the original named plaintiffs, one with a criminal record] were adequate class representatives"). A continuance could not lessen that prejudice.

Second, substitution now would result in significant new expenditures and delay. Ms. Burk's motion boldly asserts there are no differences between her and Ms. Young's claims—but neither discovery nor the motion have actually established that. Direct Energy

17

will need new discovery about Ms. Young's claims, which could take several months to complete. Many of the ESI search terms Direct Energy previously used to collect and review thousands of emails were related to Ms. Burk and the companies involved in sourcing her consent. Additional ESI searches would have to be run related to Ms. Young and her lead source(s). Direct Energy would also have to depose Ms. Young to find any peculiar issues with her claim or adequacy as a class representative. *See In re Sonus*, 229 F.R.D. at 346 (recognizing that "[i]t would be unfair to require defendants to incur substantial additional expense to investigate and litigate whether [a new plaintiff] is an adequate class representative" after the defendant had already been forced to litigate the original plaintiff's adequacy). Direct Energy will also have to independently investigate Ms. Young's adequacy[13]—and the results of its investigation of Ms. Burk proves the importance of doing so. After all that, Direct Energy will then have to oppose a new class certification motion while creating a new strategy tailored to Ms. Young. *See Ruiz v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 291 F.R.D. 170, 172 (S.D. Tex. 2013) (denying amendment that "would force Defendant to reconsider its own case strategies and theories and would undoubtedly result in additional motions, responses, and delay in this case"). All of this will cost time and money, and significant delay is certain to follow. *Arvie*, 2011

---

[13] Ms. Burk claims that "[r]elevant factual differences between [her] and Ms. Young's claims are non-existent." Doc. 97 at 11. If that were true then there would be no need for substitution, as Ms. Young would suffer from the same adequacy and credibility problems that prompted Ms. Burk's motion to substitute in the first place. And in any event, Direct Energy is entitled to seek discovery and decide for itself whether there are relevant differences between Ms. Young and Ms. Burk. Neither Direct Energy nor the Court are required to take Ms. Burk at her word on this point.

WL 1753489, at *2 (denying relief from a scheduling order deadline where "[m]ore motions practice would add to the time and expense"). Ms. Burk does not argue that a continuance could cure this prejudice, and another continuance at this juncture—when the case has been pending for nearly two years and has been placed on four different trial calendars[14]—would only exacerbate the undue delay of her untimely motion.

Third, and perhaps most importantly, allowing substitution at this time would put Direct Energy at an unfair disadvantage. As discussed in Direct Energy's opposition to class certification, one of the major problems with Ms. Burk's case is that Direct Energy has evidence that she gave express written consent to be contacted. *See* Class Cert. Opp'n at Part V.C. That evidence came from the vendor that contacted Ms. Burk, TMC. But, TMC declared bankruptcy on November 25, 2020, so obtaining similar evidence of Ms. Young's consent could now prove difficult—perhaps impossible—because the company is no longer operational and its knowledgeable representatives have left. *See* Dorko Dep. 10:4–11:17; *id.* at 19:17–20:5; *id.* at 23:15–19. If Ms. Burk had timely moved to substitute Ms. Young, Direct Energy would have been able to gather evidence from TMC without the impediment of shuttered company and ongoing bankruptcy. She did not, and her delay has caused enormous prejudice to Direct Energy's ability to access evidence that plays a crucial role in its defense. A continuance cannot cure this prejudice either.

As discussed, Ms. Burk does not acknowledge any of this prejudice. Instead, she

---

[14] *See* Doc. 19 at ¶ 7 (setting trial for the December 2020 term); Doc. 68 at ¶ 15 (continuing trial to the February/March 2021 term); Doc. 71 at ¶ 14 (continuance to June 2021); Doc. 93 at 2 (continuance until August 2021).

simply ignores it. *See* Doc. 97 at 10–11 (arguing that the only relevant prejudice is that "Direct Energy [will have] to produce[15] some amount of additional discovery relevant only to Ms. Young"). By taking that approach, she tacitly concedes that none of this prejudice is justified. If substitution is allowed, the hundreds of hours and tens-of-thousands of dollars Direct Energy spent litigating issues specific to Ms. Burk will have been wasted and the resolution of this case will be interminably delayed while Direct Energy spends untold time and money taking discovery that should have been done months ago. Direct Energy will also have to redraft its class certification brief (which it was forced to file at Ms. Burk's insistence), and build a new defense strategy. The entire point of a scheduling order is to avoid this kind of waste and delay. Ms. Burk's attorneys cannot credibly explain how their own lack of diligence justifies such prejudice to Direct Energy. That is why they did not even try—and another reason Ms. Burk fails to satisfy her Rule 16 burden.

### B. Rule 15: Substitution should be denied as untimely, prejudicial, and futile.

Under Rule 15, "[d]enial of leave to amend may be warranted for undue delay, . . . undue prejudice to the opposing party, or futility of a proposed amendment." *Kent v. Wal-Mart Stores Tx., Inc.*, NO. 3:17-CV-211, 2018 WL 953348, at *1 (S.D. Tex. Feb. 20, 2018)

---

[15] Ms. Burk's attorneys apparently *still* believe that discovery in a class action is a one-way street that consists primarily of a defendant producing documents about the named plaintiff and class. They should know better now that their attempt to investigate Ms. Burk's adequacy with nothing more than a request for production to Direct Energy has proven to be so deficient. If Ms. Young is added as a plaintiff, Direct Energy will have to produce additional documents, but it will also have to *seek* additional discovery from Ms. Young and third-parties who may have evidence of her consent. The difficulties Direct Energy has had seeking such discovery about Ms. Burk shows how substantial that undertaking will be, and the TMC bankruptcy will complicate those efforts even further.

(Hanks, J.). As discussed, Ms. Burk's undue delay in waiting nearly two years to solve a problem that existed before suit was filed weighs against allowing an amendment, especially when the amendment would require a delay to the trial setting. As also discussed, allowing amendment would cause enormous prejudice. And finally, amendment would be futile for reasons discussed in Direct Energy's pending 12(b)(1) motion to dismiss. *See* Doc. 81. Accordingly, Ms. Burk cannot even satisfy Rule 15's lenient standard.

## II.    None of the other Rules cited by Ms. Burk authorizes substitution here.

Ms. Burk's brief primarily relies on Rules 21, 23, and 24 as "procedural mechanisms" that she says justify the relief she seeks. Not so. Those Rules cannot save her bid for substitution for two fundamental reasons. First, Ms. Burk's failure to show good cause under Rule 16 bars relief under those Rules too. And second, those Rules are inapplicable and cannot authorize the relief Ms. Burk seeks.

### A.  Ms. Burk must show good cause under Rule 16 no matter what.

The Court's scheduling order did not just set a deadline for amendments; it set a deadline for "amendments to pleadings *and addition of new parties*." Doc. 19 at ¶ 1. This deadline was not restricted to Rule 15 requests, and it contained no exception for requests to add parties under Rules 21, 23, or 24. Thus, even if Ms. Burk's invocation of those three Rules were otherwise proper (it is not for reasons discussed below), she would still have to make a threshold showing of good cause to allow the untimely addition of Ms. Young as a party to the case. *See McCombs*, 1999 WL 102816 at *1 (recognizing that a Rule 21 motion filed after the deadline to add parties was subject to Rule 16's good-cause requirement); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, at *1 (N.D. Cal.

21

Sept. 17, 2010) (collecting cases "holding that Rule 16 is applicable when a proposed intervenor seeks to intervene [under Rule 24]"); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 57–58 (S.D.N.Y. 1993) ("To the extent that Rule 23 deals with intervention, it should be construed harmoniously with Rule 24."). She has not made that threshold showing of good cause, nor can she. *See supra* Argument Part I.A. So, Ms. Burk's failure to show good cause under Rule 16 is still fatal to her requested relief—whether correctly framed under Rule 15, or incorrectly framed under Rules 21, 23, or 24.

**B.  No Rule cited in Ms. Burk's motion authorizes the relief she seeks.**

Ms. Burk first cites Rule 21 as a free pass to join parties at any stage of proceedings for any reason whatsoever. In reality, Rule 21's scope is much more restrained. The text of the Rule shows it is only meant to prevent the dismissal of a case for the "misjoinder" of parties that should not participate in a suit or to cure the nonjoinder of a party that should. *See* Fed. R. Civ. P. 21. As the Fifth Circuit has expressly recognized, this means Rule 21 only provides a remedy when there are too many, or not enough, parties on one side of the case; it does not permit substitution of one lone plaintiff for another: "Rule 21 is not a substitution rule, but contemplates the retention of a party or parties when another party is added or dropped[.]" *Watson v. Employers Liability Assur. Corp.*, 202 F.2d 407, 410 (5th Cir. 1953), *rev'd on other grounds*, 348 U.S. 66, 75 S. Ct. 166, 99 L. Ed. 74 (1954); *Sable Commc'ns of California Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 n.13 (9th Cir. 1989) ("Nothing on the face of Rule 21 allows substitution of parties. The rule by its terms creates means to cure '[m]isjoinder of parties.'"); *Gordillio v. States Marine Lines*, 13 F.R.D. 445, 446 (S.D. Cal. 1952) (explaining that "Rule 21 was not adopted to give relief to a plaintiff

who sues the wrong party but to one who sues too many or too few parties" and holding that a plaintiff's request for substitution should have been filed under Rule 15). And even if Rule 21 allowed substitution of this sort, the significant prejudice to Direct Energy would make doing so here unjust. *See Sable Commc'ns*, 890 F.2d at 191 ("[E]ven if the rule applied, substitution would be proper only where 'just.' Thus, prejudice to the non-moving party will defeat a Rule 21 motion."). The Rule 21 authority in Ms. Burk's motion supports every point of Direct Energy's analysis. *Chavez* recognized that Rule 21 does not provide the governing standard for a motion to substitute and denied substitution that would be "heavily prejudicial" to the defendant. *Chavez v. Illinois State Police*, 251 F.3d 612, 632 n.4 (7th Cir. 2001); *id.* (analyzing a motion to substitute under Rules 15 and 20, not Rule 21). And, *Neopharm* simply allowed one of several named plaintiffs to withdraw while declining to permit substitution under Rule 21. *In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004).

Likewise, Rules 23 and 24 do not authorize Ms. Burk's requested relief. As she did with Rules 15 and 16, Ms. Burk cites Rules 23 and 24 as if they each provide an independent basis for relief. However, Rules 23 and 24 were amended in 1966 specifically to "synchronize" the two, so Rule 23 does not permit intervention unless Rule 24's prerequisites are met. *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1150 (5th Cir. 1975) (recognizing that "the [1966] amendments sought to . . . synchronize Rule 24 with . . . the class action provisions of Rule 23"); *Diduck*, 149 F.R.D. at 57–58 (Rule 23 must be construed harmoniously with Rule 24). So, to show that intervention is proper

under Rule 23,[16] an intervenor must also show that Rule 24's requirements are met. *See Westefer v. Snyder*, No. CIV. 00-162-GPM, 2011 WL 766188, at *2 (S.D. Ill. Feb. 25, 2011) ("[Rule 23] permits intervention in a class action by unnamed members of the class. However, to intervene, a class member must satisfy the requirements of [Rule 24]."); *In re Sonus*, 229 F.R.D. at 344 ("Intervention in a class action is governed by the same principles that apply in any other proceeding." (quoting Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1799)).

Here, Ms. Burk did not even try to make that intervention showing, nor is it her place to. Ms. Burk is not trying to intervene—and she cites no authority that suggests Ms. Young can intervene without first filing a motion of her own.[17] And even if Ms. Burk's motion could be construed as a motion to intervene by Ms. Young, it would still fail. To intervene, Ms. Young would have to first show that her motion is "timely." Fed. R. Civ. P. 23(a), (b)(1). That showing requires evidence of, among other things, "the length of time [Ms. Young] knew or should have known of [her] interest in the lawsuit." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). As discussed, Ms. Burk

---

[16] Ms. Burk cites *Arevalo* to argue that the Court may rely on Rule 23 as an independent basis for Ms. Young's substitution. *See* Doc. 97 at 8. But, that case was decided under Rule 15 and did not hold that Rule 23 provides independent grounds for substitution. *Arevalo*, 2007 WL 9712070, at *2 ("Rule 15(a) states that 'leave shall be freely given when justice so requires,' and rule 23 gives the district court significant leeway to make appropriate orders during the course of class actions . . . .").

[17] Ms. Burk misleadingly cites *D.J. through O.W.* to argue the Court may "permit Ms. Young to intervene pursuant to Rule 24." Doc. 97 at 8. That case was decided under Rule 15, and does not even mention Rule 24. *See D.J. through O.W.*, 2019 WL 1499377, at *4; *supra* n.7.

24

neglected to provide that necessary information, and all other relevant considerations weigh against a finding of timeliness. *Id.* (timeliness requires consideration of "prejudice to existing parties [Direct Energy will be prejudiced and Ms. Burk will no longer be an 'existing party'], prejudice to the intervening party if intervention is denied [Ms. Young will remain free to file her own case], and the presence of unusual circumstances [none]."). In a strikingly analogous case, a proposed intervenor contacted counsel when the lawsuit was first filed but delayed moving to intervene until after the named plaintiff sought to withdraw—when his criminal history came to light—and the court rightly found that such untimeliness required denial of intervention. *See In re Sonus*, 229 F.R.D. at 345. Thus, Ms. Burk cannot show that Ms. Young is timely seeking to intervene, and she cannot avoid that problem by declining to reveal when Ms. Young first learned of her interest and contacted counsel.

Timeliness is not the only bar to Ms. Young's intervention, however. Ms. Young can indisputably protect her interests by filing a separate suit, so allowing intervention would "unduly delay the proceedings [and] prejudice existing parties." *See Kneeland*, 806 F.2d at 1289. Because Ms. Young has not even attempted to satisfy the criteria for intervention under Rules 23 and 24, those Rules cannot provide her relief either.

## CONCLUSION

Ms. Burk's motion to substitute in Ms. Young as the named plaintiff would undermine Direct Energy's ability to defend itself and drastically increase its cost of defense—all because she failed to act diligently and move timely. This is precisely the kind of prejudice that Rule 16 is meant to avoid, and her motion must be denied.

25

DATE: February 26, 2021                MCDOWELL HETHERINGTON LLP


By: */s/ Michael D. Matthews, Jr.*
        Michael D. Matthews, Jr.
        Texas Bar No. 24051009
        William B. Thomas
        Texas Bar No. 24083965
        1001 Fannin Street, Suite 2700
        Houston, Texas 77002
        T:  (713) 337-5580
        F:  (713) 337-8850
        matt.matthews@mhllp.com
        william.thomas@mhllp.com

        *Counsel for Direct Energy, LP*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 26th day of February 2021 via CM/ECF on all counsel of record.

        */s/ Michael D. Matthews, Jr.*
        Michael D. Matthews, Jr