**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRITTANY BURK, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| | § | Case No. 4:19-cv-663 |
| v. | § § | |
| DIRECT ENERGY, LP, | § § | |
| Defendants | § | |

**DEFENDANT DIRECT ENERGY, LP'S EVIDENTIARY APPENDIX IN**
**SUPPORT OF ITS RESPONSE IN OPPOSITION TO PLAINTIFF'S**
<u>**MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**</u>

## <u>TABLE OF CONTENTS</u>

| Exhibit | | Page |
|---|---|---|
| 1 | Declaration of Michael D. Matthews, Jr. in Support of Direct Energy's Opposition to Plaintiff's Motion to Substitute Class Representative | A0001 |
| 1-A | Summary of Brittany Burk's Criminal Records | A0004 |
| 1-B | Excerpts from Transcript of the deposition of Brittany Burk taken November 17, 2020 | A0006 |
| 1-C | Excerpts from Transcript of the deposition of Andrew Dorko taken February 23, 2021 | A0018 |
| 1-D | Excerpts from Transcript of proceedings held on December 9, 2020 | A0025 |
| 1-E | Excerpts from Transcript of proceedings held on December 21, 2020 | A0039 |

# EXHIBIT 1

A0001

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRITTANY BURK, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiff, | § § | Case No. 4:19-cv-663 |
| v. | § § | |
| DIRECT ENERGY, LP, | § § | |
| Defendants | § § | |

**DECLARATION OF MICHAEL D. MATTHEWS, JR.**
**IN SUPPORT OF DIRECT ENERGY'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**

I, Michael D. Matthews, Jr., hereby declare as follows:

1.     I am over the age of twenty-one and am fully competent to make this declaration. I have never been convicted of a felony. The statements contained herein are true and correct and are within my personal knowledge.

2.     I am an attorney and partner with the law firm of McDowell Hetherington LLP, in its office located at 1001 Fannin Street, Suite 2700, Houston, Texas 77002. I am and have been admitted to practice law, and I am a member in good standing of the bars of the States of Texas and New York. I represent Defendant Direct Energy Services, LP, in the above-captioned matter.

3.     On November 15, 2020, I googled Ms. Burk's name in preparation for her deposition. That search revealed several pre-suit arrests.

1

4.      The discovery of Ms. Burk's criminal history prompted further investigation, which continued after Ms. Burk's first deposition. A summary of the criminal records revealed by that investigation is attached as **Exhibit 1-A.**

5.      The following exhibits attached hereto are true and correct copies of relevant excerpts from the transcripts of depositions taken in connection with this litigation:

**Exhibit 1-B**:      Transcript of the deposition of Brittany Burk taken November 17, 2020.

**Exhibit 1-C**:      Transcript of the deposition of Andrew Dorko taken February 23, 2021.

6.      The following exhibits attached hereto are true and correct copies of transcripts from proceedings held in the litigation:

**Exhibit 1-D**:      Transcript of proceedings held on December 9, 2020.

**Exhibit 1-E**:      Transcript of proceedings held on December 21, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2021.

Michael D. Matthews, Jr.

2

**A0003**

# EXHIBIT 1-A

**Brittany Burk Criminal History Summary**

| Offense Date | Charge | Offense Level | Jurisdiction | Time in Jail |
|---|---|---|---|---|
| 03.14.11 | Drug Possession | Class A Misdemeanor<br>PC § 481.117(b)<br>Penalty Group 3 – e.g., opioids, benzos, valium, Ritalin, etc. | Henderson Co. Court at Law 2 | 09.20.11 – 09.22.11<br>01.20.12 – 02.02.12 |
| 03.14.11 | Drug Possession | Class B Misdemeanor<br>§ 481.121(b)(1) - Marijuana <2 oz | Henderson Co. Court at Law 2 | 09.20.11 – 09.22.11<br>01.20.12 – 02.02.12 |
| 03.14.11 | Drug Possession | Class A Misdemeanor<br>PC § 483.041 - Prescription drug w/o Prescription | Henderson Co. Court at Law 2 | 09.20.11 – 09.22.11<br>01.20.12 – 02.02.12 |
| 01.21.13 | Failure to Appear | Class C Misdemeanor<br>PC § 38.10 | Gun Barrel City PD<br>Henderson Co. JP2 | 01.22.13 – 02.03.13 |
| 03.20.13 | Theft of Property<br>$500 - $1500 (cell phone) | Class A Misdemeanor<br>PC § 31.03(e)(3) | Henderson Co. Sheriff /<br>Henderson Co. Court at Law | Unknown |
| 09.14.14 | Hindering apprehension of a known felon | Third Degree Felony<br>PC § 38.05(d) | Henderson Co. Sheriff /<br>Henderson Co. 173rd Dist. Ct. | Booked/released 09.14.14,<br>12.30.14 – 01.02.2015 |
| 09.14.14 | Disorderly Conduct | Class C Misdemeanor | Henderson Co. Sheriff /<br>Henderson Co. 173rd Dist. Ct. | N/A |
| 03.03.18 | Possession of Drug Paraphernalia | Class C Misdemeanor<br>HSC § 481.125 | Payne Springs PD / Payne<br>Springs Muni Court | 04.06.18 – 04.07.18 |
| 03.20.18 | Failure to Appear | Class C Misdemeanor<br>PC § 38.10 | Payne Springs PD / Payne<br>Springs Muni Court | 04.06.18 – 04.07.18 |
| 04.02.20 | Criminal Trespass | Class B Misdemeanor | Henderson Co. Sheriff /<br>Henderson Co. Court at Law 2 | 04.20.20 – 04.21.20 |
| 04.19.20 | Criminal Trespass with a Deadly Weapon | Class A Misdemeanor<br>PC § 30.05(d)(3)(C) | Henderson Co. Sheriff /<br>Henderson Co. Court at Law 2 | 04.20.20 – 04.21.20 |
| 05.18.20 | Criminal Trespass | TBD (arrest only to date) | Henderson Co. Sheriff | Booked/released 05.18.20 |

**A0005**

# EXHIBIT 1-B

```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION
 3   BRITTANY BURK, on behalf of            )
     herself and others similarly          )
 4   situated                        )
        Plaintiffs,                  ) Cause No.:
 5   4:19-cv-00663
                                     )
 6   vs.                                   )
                                     )
 7   DIRECT ENERGY, LP,            )
        Defendant.                 )
 8
 9                   ORAL ZOOM DEPOSITION
10                     BRITTANY BURK
11                    NOVEMBER 17, 2020
12                        VOLUME 1
13
14
15       ORAL VIDEOTAPED ZOOM DEPOSITION OF BRITTANY
16   BURK, produced as a witness at the instance of the
17   Defendant and duly sworn, was taken in the
18   above-styled and numbered cause on November 17,
19   2020, from 10:00 a.m. to 2:04 p.m., before Jill M.
20   Vaughan, Certified Shorthand Reporter in and for the
21   State of Texas, reported by computerized stenotype
22   machine.  The witness appeared remotely at 113
23   Pawnee Trail, Mabank, Texas.  The deposition was
24   taken pursuant to the Federal Rules of Civil
25   Procedure and the provisions stated on the record or
```

Page 1

1  attached hereto.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 2

---

1              INDEX            PAGE
2  Appearances .............................    2
3  BRITTANY BURK
4    Examination by Mr. Matthews .........    4
    Examination by Mr. Klinger ..........    140
5    Further Examination by Mr. Matthews .   143
6  Signature and changes  ..................    145
    Reporter's Certificate ..................    147
7
8              EXHIBIT INDEX
9  NO.      DESCRIPTION            PAGE
10  EXHIBIT 1  Original Complaint ................    49
11  EXHIBIT 2  Customer information screen shot ...    50
12  EXHIBIT 3  Audio file note ....................    65
13  EXHIBIT 4  Copies of Burk texts ...............    93
14  EXHIBIT 5  Wayback website excerpt ...........    98
15  EXHIBIT 6  Simply Cell Phone screen shot ......    100
16  EXHIBIT 7  Lead information ...................    101
17  EXHIBIT 8  Brittany Louise Burk arrests .......    134
18
19
20
21
22
23
24
25

Page 4

---

1              APPEARANCES
2
   FOR THE PLAINTIFFS:
3
    Mr. Gary Klinger      (Via Zoom)
4    Mason Lietz & Klinger, LLP
    227 W. Monroe St.
5    Suite  2100
    Chicago, IL 60606
6    312-283-3814
    gklinger@masonllp.com
7
8  FOR THE DEFENDANT:
9    Mr. Michael D. Matthews, Jr.   (Via Zoom)
    Mr. William B. Thomas
10    MCDOWELL HETHERINGTON
    1001 Fannin
11    Suite 2709
    Houston, TX 77002
12    713-337-5580
    matt.matthews@mhllp.com
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

---

1      THE COURT REPORTER:  Today's date is
2  November 17, 2020.  The time is 10:00 am.  This is the
3  deposition of Brittany Burk.  This deposition is being
4  conducted remotely by agreement of the parties or in
5  accordance with the current Emergency Orders.  The
6  witness is located at 113 Pawnee Trail, Mabank, Texas.
7  My name is Jill Vaughan with Veritext.  I am
8  administering the oath and reporting the deposition
9  remotely by stenographic means.  Would you raise
10  your right hand.
11          BRITTANY BURK
12    having been first duly sworn, testified as
13  follows:
14          EXAMINATION
15  BY MR. MATTHEWS:
16    Q.  Good morning, Ms. Burk.  My name is
17  Matt Matthews.  I represent Direct Energy in this
18  lawsuit.  You understand that, right?
19    A.  Yes, sir.
20    Q.  Also with me today on my screen is my
21  colleague Will Thomas.  And I think you know
22  Mr. Klinger.  I'll be the one asking you questions
23  today, at least from our side; and I will try to do my
24  best to be efficient and not go longer than it needs
25  to go.  But thank you for being here today.

Page 5

---

2 (Pages 2 - 5)

1    Q.   You got into an accident and Allstate didn't
2  pay?
3    A.   Yes.
4    Q.   Are there any other lawsuits that you filed
5  as a plaintiff?
6    A.   No, sir.
7    Q.   Have you been a defendant in any other
8  lawsuit?
9    A.   No, sir.
10   Q.   Nobody has ever sued you?
11   A.   No, sir.
12   Q.   Have you a letter to any other companies
13 complaining about telemarketing?
14      MR. KLINGER:  Object to form, vague.  You
15 can answer.
16   A.   No, sir.
17   Q.   (By Mr. Matthews) When you sent a letter
18 or email or called, whatever, have you collected any
19 money from any other telemarketing demand?
20   A.   No, sir.
21   Q.   Ms. Burk, have you ever been arrested?
22   A.   Yes, sir.
23      MR. KLINGER:  Object to the form.
24   Q.   (By Mr. Matthews) When was that?
25   A.   2011.

Page 114

1    Q.   I understand but confidentiality is not an
2  objection that's valid in this case.  My client has
3  had to produce a fair amount of confidential
4  information and has done so under the protective order
5  in the case.  So again what were you arrested for in
6  2011?
7       MR. KLINGER:  And I'll just put an objection
8  on the record as to relevance.  Again Brittany, it's
9  your choice to respond.
10   A.   I choose not to answer.
11   Q.   (By Mr. Matthews) I want to be clear,
12 relevance is not a valid objection in a deposition
13 like this.  So I have -- I'm going to ask again.  I
14 want to tell you if you don't answer these questions
15 about the arrests, I'm going to -- again I'm not
16 trying to be mean.  I'm entitled to find out this
17 information.  And the court may never admit it in
18 this case, but I get to ask and find out that
19 background.  So if you are not willing to answer,
20 I'm going to ask the judge and make you sit for
21 another deposition where I get to ask you these
22 questions again.  And I think he's going to let me
23 do it.
24      MR. KLINGER:  I'll just object again as
25 asked and answered.  And, Matt, perhaps if we went off

Page 116

1    Q.   I'm sorry, 2011 you said?
2    A.   Yes, sir.
3    Q.   What were you arrested for?
4    A.   I choose not to answer.
5    Q.   Well, it's -- you kind of have to.
6       MR. KLINGER:  I missed that question, Matt.
7  Do you mind -- and I missed the response.
8       MR. MATTHEWS:  Sure, I don't mind.  I said
9  what was the arrest for and Ms. Burk said that she
10 would choose not to answer.
11      MR. KLINGER:  Okay.  Ms. Burk, Brittany, are
12 you choosing not to disclose details of the -- of what
13 you believe was an arrest?
14      THE WITNESS:  Yes, sir.
15   Q.   (By Mr. Matthews) Ms. Burk, I'm going to
16 ask again because I'm not trying to be rude or
17 anything like that, but I'm entitled to ask
18 questions about the background and things of this
19 nature.  We can -- you know, if you want to
20 designate it confidential, you're free to do that;
21 but issues like this can be relevant.  They may not
22 be admissible, but I get to ask about them.
23      So in 2011 what were you arrested
24 for?
25   A.   Confidential.

Page 115

1  the record, we could come to some accord.  I just
2  would need a minute to chat with my client.
3       MR. MATTHEWS:  Okay.
4       MR. MATTHEWS:  Do you want me to do that?
5       MR. MATTHEWS:  Yes, because I'm going to ask
6  -- I have, you know, I certainly have a right to an
7  answer to some of these questions.  And I don't want
8  to be difficult about it.  I don't want to come back
9  and do another deposition.  But this is perfectly
10 normal, and I'm entitled to an answer.  So please do,
11 we can take a quick break.
12      MR. KLINGER:  Let's take a five-minute
13 break, and then do you think you maybe 20 or 30
14 minutes left?
15      MR. MATTHEWS:  Maybe less.
16      MR. KLINGER:  So let's take a quick
17 five-minute break.  Brittany, I am going to call your
18 cell phone, and then we can chat.  Okay?
19      THE WITNESS:  Yes, sir.
20      (Recess taken)
21   Q.   (By Mr. Matthews) We're back from break,
22 Ms. Burk.  Thanks for making time for that break and
23 speaking to Mr. Klinger.  So now I'm going to go
24 back to that line of questioning.  And again I'm not
25 trying to be rude.  Just, you know, I've got to

Page 117

30 (Pages 114 - 117)

A0009

**Page 118**

1  represent my client to the best of my ability, and
2  it may be a rabbit trail I don't have to run down.
3  There may be nothing there, but I still have to
4  look.
5          So the first time you were arrested
6  was in 2011?
7  A.  Yes, sir.
8  Q.  What was that arrest for?
9  A.  It was misdemeanor drug charge, and I'm
10  embarrassed to announce.  So...
11  Q.  I'm not trying to embarrass you or anything
12  like that.  And, you know, I understand why you feel
13  that way, if you'd like to make anything confidential,
14  that's your right to do it.  However, I have a right
15  to challenge it if it becomes relevant for some
16  reason.  But you said a misdemeanor drug charge?
17  A.  Yes.
18  Q.  And what was the drug?
19  A.  I wish -- I wish not to -- I'm embarrassed
20  of it and wish not to -- to speak of that, I guess.
21  Q.  But I think I'm entitled to know.  So what
22  was the drug that was part of the charge?
23  A.  It was just a dangerous drug misdemeanor.
24  Q.  I understand.  What drug specifically?
25  A.  That was the charge, sir.

**Page 119**

1  Q.  That's not my question.  My question was:
2  What drug were you charged with?  Was it possession?
3      MR. KLINGER:  Well, I think this is my
4  understanding, it's her testimony that it's a
5  misdemeanor drug charge and that, you know, she's not
6  comfortable disclosing the nature of the drug.  You
7  know, I'm not -- if she's not comfortable disclosing
8  that, I'm not going to ask her to speak to that.  I
9  don't know how it's -- I can understand how -- what
10  the nature of the arrest was, why that would be
11  relevant which is why I allowed you to probe, but this
12  in my opinion doesn't go to anything like credibility
13  or anything like that.  You may differ, but I don't
14  see how if she's embarrassed to disclose the nature of
15  the drug that she would be required to do so.
16      MR. MATTHEWS:  It may not end up being
17  admissible, it may not end up being relevant; but I'm
18  entitled to discovery about it, to make that
19  discovery.
20  Q.  (By Mr. Matthews)  Ms. Burk, what was the
21  drug that was involved in that charge?
22      MR. KLINGER:  I'll just state the same
23  objection.  And, Ms. Burk, if you were not inclined to
24  disclose the nature of the drug that's your choice.
25  We'll deal with it if we have to.

**Page 120**

1  A.  Like I said, I choose not to disclose that
2  information.  If the judge requires it, we'll discuss
3  at that time.
4  Q.  (By Mr. Matthews)  If the judge requires
5  it, you'll discuss it at that time?
6  A.  Correct.
7  Q.  Ms. Burk, I don't want to have to go to him
8  and talk about that.  I really don't because it's
9  going to be additional cost and expense for everybody.
10  And if I have to do it, I'm going to ask that the
11  costs of the additional deposition be paid by you, not
12  by my client.  This is a routine thing.  I'll ask one
13  more time and if you want to refuse to answer, then
14  with the understanding of what I may do afterwards,
15  then so be it.  But what was the drug that was
16  involved in that charge?
17  A.  I choose not to disclose.
18  Q.  Okay.  Have you been arrested any other
19  times?  Ms. Burk?  Are there other times that you've
20  been arrested?
21  A.  No, sir.
22  Q.  Your testimony is that in 2011 is that the
23  only time that you've been arrested?
24  A.  Yes, sir.
25      MR. KLINGER:  Object to the form.  You can

**Page 121**

1  answer.
2  A.  Yes, sir.
3  Q.  (By Mr. Matthews)  Ms. Burk, I'll represent
4  to you I have found public records of additional
5  arrests.  And I've found mugshots of additional
6  arrests.  So I'm going to ask you the question
7  again.  Is it your testimony that you have only been
8  arrested one time in 2011 when you were --
9      MR. KLINGER:  Go ahead and finish.  Object
10  to the form.  Matt, if you have the record and you
11  want to show her, perhaps a misunderstanding, you
12  know.  I would highly suggest that you show them.
13  A.  That's my only conviction.
14  Q.  (By Mr. Matthews)  Okay.  I understand.
15  I'm going to ask about convictions in a minute, but
16  I'm -- right now I'm just asking about arrests.  So
17  the first time you were arrested was in 2011 for a
18  drug charge; is that right?  Is that right?
19  A.  Yes, sir.
20  Q.  And you're unwilling to tell me what the
21  drug was?
22  A.  Yes, sir.
23  Q.  Was it a possession charge or intent to
24  distribute?  Ma'am?
25  A.  No, sir.  It was misdemeanor drug charge.

31 (Pages 118 - 121)

A0010

1    Q.  Just possession?

2    A.  Just misdemeanor, yes.

3    Q.  I'm not asking about the qualifications.

4  What were you charged with doing, possessing a drug or

5  trying to sell it?

6    A.  Possessing.

7    Q.  What was the --

8         MR. KLINGER:  Object to the extent you're

9  required to speculate.  And if you don't understand

10  the nature, then you can say that.

11    Q.  (By Mr. Matthews) And you were convicted

12  of that crime; is that right?

13    A.  Yes, sir.

14    Q.  What was your sentence?

15         MR. KLINGER:  Object to the extent it calls

16  for legal conclusion.  If you understand the sentence,

17  then respond; but if you do not know, do not guess.

18         THE WITNESS:  Was that directed to me?

19    Q.  (By Mr. Matthews) Yes, ma'am.

20    A.  15 days.

21    Q.  15 days.  And in what correctional facility?

22    A.  In the county.

23    Q.  Henderson County?

24    A.  Kaufman.

25    Q.  Kaufman County.  Ms. Burk, what was the

Page 122

1  second time you were arrested?

2    A.  I don't recall.

3    Q.  You don't recall what year it was?

4    A.  No, sir.

5    Q.  Do you recall being arrested a second time?

6    A.  Yes, sir.

7    Q.  Do you recall what you were arrested for the

8  second time?

9    A.  I don't remember -- I don't recall.

10    Q.  Was it another drug charge?

11    A.  No, sir.

12    Q.  You have no idea what you were arrested for

13  the second time?

14    A.  No, sir.

15    Q.  You don't know what year it was?

16    A.  No, sir.

17    Q.  Where were you arrested?

18    A.  I don't remember.

19    Q.  Do you remember what state you were in when

20  you were arrested the second time?

21    A.  I'm not sure.

22    Q.  You don't know what state you were in?

23    A.  No, sir.

24    Q.  Were you in the United States?

25    A.  Yes, sir.

Page 123

1    Q.  Were you incarcerated the second time you

2  were arrested, taken to jail?

3    A.  I don't recall.

4    Q.  Were you convicted of any crime after that

5  second arrest?

6    A.  No, sir.

7    Q.  The charges were dropped?

8    A.  To the best of my knowledge.

9         MR. KLINGER:  Objection, calls for a legal

10  conclusion.

11    Q.  (By Mr. Matthews) What was the third time

12  you were arrested?  When was that?

13    A.  I don't remember.

14    Q.  You were arrested --

15    A.  Not to my knowledge.

16    Q.  You were arrested a third time, correct?

17    A.  No, I'm not sure.

18    Q.  You don't remember if you were arrested

19  three times?

20    A.  No, sir.

21    Q.  Do you -- as we sit here today you don't

22  know if you were arrested more than two times in your

23  life?

24    A.  No, sir.

25    Q.  Possibly you were?

Page 124

1    A.  I'm not sure.

2    Q.  Meaning, yes, it is possible?

3    A.  I said I'm not sure.

4         MR. KLINGER:  Object to the extent it calls

5  for you to speculation and legal conclusion.

6    Q.  (By Mr. Matthews) You can remember two

7  times in your life that you were arrested, right?

8    A.  To the best of my knowledge.

9    Q.  You may have been arrested another time you

10  can't remember?

11    A.  Yes, sir.

12    Q.  Ms. Burk, I don't mean any judgment in this

13  question; but I need to ask this:  Have you had drug

14  problems in the past?

15    A.  No, sir.

16         MR. KLINGER:  Object to form.

17    Q.  (By Mr. Matthews) No?

18    A.  No, sir.

19    Q.  Do you take illicit drugs now?

20    A.  No, sir.

21         MR. KLINGER:  Object to the form.

22    Q.  (By Mr. Matthews) Put a pin in that for

23  the moment.  Ms. Burk, can you tell me the names of

24  the lawyers who are representing you in this case.

25    A.  Gary and Daniel, I do believe.

Page 125

32 (Pages 122 - 125)

1  last name that lives in Mabank?
2    A.  No, sir.  What is it in regards to?
3    Q.  Over the years?
4    A.  No, sir.  What is it regarding?
5    Q.  Do you -- do you know anyone by the name of
6  Gary Hale?
7    A.  No, sir.
8    Q.  Do you know anybody with the name of Melissa
9  Lucas?
10   A.  No, sir.
11   Q.  Melissa Argo, A-r-g-o?
12   A.  No, sir.
13   Q.  Melissa Richards?
14   A.  No, sir.
15   Q.  Do you know anybody by the name of
16  Christopher Layne, L-a-y-n-e?
17   A.  No, sir.
18   Q.  Do you know a Chris Layne?
19   A.  No, sir.
20   Q.  Trey Layne?
21   A.  No, sir.
22   Q.  Do you know Christopher Burroughs?
23   A.  No, sir.
24   Q.  Do you know Courtney Mattes, M-a-t-t-e-s?
25   A.  No, sir.

Page 130

1    Q.  And Nicole Mattes?
2    A.  No, sir.
3    Q.  Have your ever heard any of those people?
4    A.  No, sir.
5    Q.  Whether you're acquainted with them or not,
6  you've never heard those names?
7    A.  No.
8    Q.  You don't know of anyone in the Mabank area
9  by those names -- by any of those names?
10   A.  No, sir.
11       MR. MATTHEWS:  Let's take a break real
12  quick.  I'm going to kind of look over my notes, see
13  if I have any clean-up things that I need to do and
14  then we can come back.  So maybe ten minutes.
15       (Recess taken)
16       MR. MATTHEWS:  I'm going to see if I can
17  share the screen real quick just so -- I'm going to
18  share my screen, and I don't think it's working.
19   Q.  (By Mr. Matthews) Really quick while I'm
20  trying to fix that, Ms. Burk, at the beginning of
21  the deposition I asked you if anybody else was there
22  with you in your house; and at the time it was just
23  your dad, right?
24   A.  Yes, sir.
25   Q.  Has anybody else come into the house while

Page 131

1  you were giving the deposition?
2    A.  No, sir.
3    Q.  Has anybody given you documents during the
4  deposition to look at?
5    A.  No, sir.
6    Q.  Have you had any notes in front of you while
7  I've been asking questions?
8    A.  No, sir.
9    Q.  Has anyone sent you any emails or text
10  messages about the lawsuit while we've been in this
11  deposition?
12   A.  No, sir.
13   Q.  Is there anything about your testimony you'd
14  like to change?
15   A.  No, sir.
16   Q.  Ms. Burk, I'm going to share my screen right
17  now and what I want to ask you first is if this is
18  you.  I'm going to show you a few pictures.  This is
19  something that I came across, and there are a few
20  different mugshots there.  I'm not trying to be rude
21  or pick on you.  I just want to see if this is you.
22  That first mugshot, is that you?
23   A.  Yes.
24   Q.  What about the second one?
25   A.  Yes, sir.

Page 132

1    Q.  And what about the third?  There are two
2  that appear to be the same, like, duplicates.
3    A.  Yes.
4    Q.  So we're now clicking on a third unique
5  photo.  Is that also you?
6    A.  Yes, sir.
7    Q.  Looking at these pictures, does that refresh
8  your recollection about when you may have been
9  arrested?
10   A.  No, sir.
11   Q.  You couldn't tell me anything about the
12  years other than the one arrest you told me about in
13  2011?
14   A.  No, sir.
15   Q.  You don't remember anything about the
16  charges?
17   A.  No, sir.
18   Q.  Do you remember being arrested for criminal
19  trespass?
20   A.  No, sir.
21   Q.  You deny being arrested for criminal
22  trespass, or you just don't remember?
23   A.  Just don't remember.
24       MR. MATTHEWS:  Let's scroll down a little
25  bit.  So let's go a little bit further down.  Stop

Page 133

34 (Pages 130 - 133)

1  there.  Let's go back up.
2      Q.  (By Mr. Matthews) So we have a section
3  here that says:  "Recent Arrests."  The first one is
4  for December 30th, 2014.  Do you remember being
5  arrested on December 30th, 2014?
6      A.  Not that I recall.
7      Q.  What about on September 14th, 2014?
8      A.  I don't remember, sir.
9      Q.  What about on January 2nd, 2013?
10     A.  No, sir.
11     Q.  Do you deny that you were arrested on those
12  dates, or you just don't remember?
13     A.  I just don't remember.
14     Q.  You don't remember anything about those
15  experiences at all?
16     A.  No, sir.
17     Q.  Is there -- I asked you earlier but again
18  have you had any sort of memory issues, Ms. Burk?
19     A.  No, sir.
20     Q.  In that period of time were you taking any
21  substances that affected your memory?
22     A.  No, sir.
23     Q.  I mean, an arrest is a fairly memorable
24  event, no?
25         MR. KLINGER:  Object to the form.

Page 134

1  conclusion.
2      Q.  (By Mr. Matthews) But what charge was
3  dropped?
4      A.  Any that you see.
5      Q.  So you were -- okay.  Let me see if I got it
6  right.  You were charged with hindering the
7  apprehension or prosecution of a known felon but that
8  charge was later dropped?
9         MR. KLINGER:  Object to the extent it
10  misstates her testimony.
11     Q.  (By Mr. Matthews) Have I got that right?
12     A.  Yes, sir.
13     Q.  Yes?
14     A.  Yes, sir.
15     Q.  Tell me what happened.  Who was the known
16  felon?
17     A.  Somebody I wasn't -- I didn't know.  So I
18  had nothing to do with that.
19     Q.  Where did this occur?
20     A.  What do you mean?
21     Q.  You were arrested and charged with hindering
22  the apprehension, arrest of a felon December 2014?
23     A.  Sure.
24     Q.  You were arrested for that, correct?
25     A.  Correct.

Page 136

1      Q.  (By Mr. Matthews) You don't have any
2  memory of these three arrests?
3      A.  No, sir.
4         MR. MATTHEWS:  Gary, we'll take a screen
5  shot of this whole website and send it to you.  We'll
6  mark it as Exhibit 8 to the deposition.
7         (Exhibit 8 marked.)
8         MR. MATTHEWS:  If we can scroll down little
9  bit further under:  "Recent Charges."
10     Q.  (By Mr. Matthews) So December 30, 2014,
11  the charge that's listed here is interfering with
12  apprehension or prosecution of a known felon.  Do
13  you remember being charged with that offense?
14     A.  Huh-uh.  I wasn't charge with that.
15     Q.  So you remember that you were not, correct?
16     A.  Correct.
17     Q.  What were you charged with?
18     A.  Nothing.  They dropped it.  They were all
19  dropped.
20     Q.  I understand, but there's got to be charge
21  before a charge can be dropped, right?  So what was
22  the charge?
23         MR. KLINGER:  Object to the extent it calls
24  for legal conclusion.
25         MR. MATTHEWS:  I think that's more of logic

Page 135

1      Q.  And what were the circumstances under which
2  you were arrested?  What were you --
3         MR. KLINGER:  Objection.
4      A.  What do you mean?
5      Q.  (By Mr. Matthews) I mean, what were you
6  doing when you were arrested?
7      A.  I have -- it's not -- I choose not to
8  answer.  And it's bogus, so, therefore, they dropped
9  the charge.
10     Q.  I understand.  I'm not saying that's why.
11  I'm asking.  You know, tell me why it was bogus.
12     A.  Because it had nothing to do with me.
13     Q.  What were you doing?  Why were you arrested?
14     A.  I was falsely accused for it.
15     Q.  And why did the police believe that you were
16  hindering the apprehension of prosecution of a known
17  felon?
18         MR. KLINGER:  Object to the extent it calls
19  for speculation regarding what the police believed.
20  Brittany, if you know the answer, you can answer,
21  obviously.
22     A.  I don't know.
23     Q.  (By Mr. Matthews) Who was the person who
24  was the known fellow?
25     A.  I didn't know that person, or I would have

Page 137

1  been charged.

2  Q.  I understand.  What was the person's name?

3  A.  I don't know.

4  Q.  Did the police just show up at your door one

5  day and say we're arresting you for apprehension of an

6  unspecified felon?

7  A.  They had the wrong person.

8  Q.  I understand.  Just explain to me what

9  happened.

10  MR. KLINGER:  Objection to the extent that's

11  been answered.  I think she said she doesn't recall.

12  A.  I don't recall, sir.

13  MR. MATTHEWS:  I'm going to object to the

14  speaking objections.  And you know that's not what she

15  said.  She said I'm not going to answer the question.

16  She didn't say I don't recall.

17  Q.  (By Mr. Matthews)  So, Ms. Burk, I'm going

18  to ask one more time because I don't think -- it's

19  been asked.  It has not been answered.  So what was

20  happening that led the police to show up and arrest

21  you?

22  A.  I don't know.

23  Q.  You don't know who the person was --

24  A.  No.

25  Q.  -- the police thought you were involved or

Page 138

1  anything --

2  A.  No.

3  Q.  -- that you can explain that?

4  MR. KLINGER:  Object.  Back up here.  Object

5  to the extent it's been asked and answered and calls

6  for speculation, but also I'll just state the ground

7  to my objection.  I don't mean it to be a, quote,

8  speaking objection.  I think I've been pretty good

9  about that today.  I would hope you agree.  Ms. Burk,

10  answer if you can.

11  A.  I don't know.

12  Q.  (By Mr. Matthews)  Okay.  How much time did

13  you spend in jail --

14  A.  I didn't.

15  Q.  -- because of that?

16  A.  I was released immediately.

17  Q.  Immediately.

18  A.  Yeah.

19  Q.  And why?

20  A.  Like I said earlier, it was not me that they

21  were trying to -- I don't know.  They had the wrong

22  person.

23  Q.  I understand.  What was the name of the

24  felon?

25  A.  I don't know.  I didn't know the person.

Page 139

1  Q.  All right.  How much time did you spend in

2  jail before you were released?

3  A.  I don't remember.

4  Q.  Do you know if it would have been more than

5  a day?

6  A.  I don't believe so.

7  MR. MATTHEWS:  Scroll down a bit.

8  Q.  (By Mr. Matthews)  You don't remember

9  spending New Year's in jail in 2014?

10  A.  No, sir.

11  Q.  Do you deny you did, or you just don't

12  remember?

13  A.  I don't remember.

14  Q.  So you told me about an arrest in 2011 and

15  we have looked here at three different arrests in 2013

16  and 2014.  So aside from those four, are there any

17  other times you've been arrested?

18  A.  Not that I recall.

19  Q.  There may have been, you just don't recall?

20  A.  Yes, sir.

21  Q.  Thank you.  Bear with me just a moment.

22  Ms. Burk, those are all my questions.  I really thank

23  you for your time today and being patient with me, and

24  I will pass the witness.

25  MR. KLINGER:  Thank you.  Matt, I just have

Page 140

1  a couple of questions.

2  EXAMINATION

3  BY MR. KLINGER:

4  Q.  Ms. Burk, do you recall receiving discovery

5  requests in this case which required you to produce

6  documents?

7  A.  Yes, sir.

8  Q.  And at the time we sent those -- your

9  lawyers, me and Daniel sent those requests to you, do

10  you recall looking for documents responsive to each of

11  those requests?

12  A.  Yes, sir.

13  Q.  And did you search everywhere within your

14  power to find these documents; including your

15  computer, and your cell phone at the time?

16  A.  Yes, sir.

17  Q.  Did you produce everything in your

18  possession that you would have been able to access and

19  produce at that time?

20  A.  Yes, sir.

21  Q.  If your dad's laptop was around, would you

22  have searched that as well and produced anything that

23  you believed was relevant on there if there was

24  anything?

25  A.  Yes, sir.

Page 141

36 (Pages 138 - 141)

1    Q.  And is it because -- you know that was like
2    two years ago.  Is it because of the time frame that
3    you don't remember the precise details of everything?
4    A.  Yes, sir.
5         MR. MATTHEWS:  Objection, leading.
6         MR. KLINGER:  I'm sorry, Matt?
7         MR. MATTHEWS:  A leading objection is what I
8    said.
9    Q.  (By Mr. Klinger) Ms. Burk, did you use
10   your dad's laptop at the time that you received the
11   calls in question?
12   A.  No, sir.
13   Q.  We talked about a number of -- well, strike
14   that.
15        Mr. Matthews put on a -- what
16   appeared to be a screen shot of an Internet website
17   that pertained to some possible arrests.  Do you
18   recall?
19   A.  Yes, sir.
20   Q.  Were you confused about the meaning of
21   arrest and conviction when we were talking about that
22   earlier today?
23   A.  Yes, sir.
24        MR. MATTHEWS:  Objection, leading.
25   Q.  (By Mr. Klinger) Just to be clear, is that

1    why you said you only had the one arrest because you
2    weren't clear as to conviction and arrest?
3         MR. MATTHEWS:  Objection, leading.
4    Q.  (By Mr. Klinger) You can answer.
5    A.  Yes, sir.
6    Q.  Ms. Burk, we haven't discussed this today it
7    hasn't come up; but I wanted to ask you this.  Are you
8    pregnant right now?
9    A.  Yes, sir.
10   Q.  Congratulations on that.  And is that why
11   you're not feeling well right now?
12   A.  Yes, sir.
13        MR. MATTHEWS:  Objection, leading.
14   Q.  (By Mr. Klinger) Is that why you've been a
15   little lethargic during this deposition?
16   A.  Yes, sir.
17        MR. KLINGER:  Same objection.  I'm sorry,
18   court reporter did you get both of those?
19        THE COURT REPORTER.:  Yes.
20   Q.  (By Mr. Klinger) Ms. Burk, I'm sorry, what
21   was your -- what was your response?
22   A.  Yes, sir.  My blood pressure has been really
23   high for this, sorry.
24   Q.  Has that affected you in any manner during
25   this deposition?

1    A.  Yes.
2    Q.  In what way?
3    A.  I just feel really bad and my face is
4    flushed right now.  I checked it on break, and it was
5    through the roof.
6    Q.  I'm sorry to hear that.  Let me see if I
7    have anything else here.
8         MR. KLINGER:  I've got nothing further.
9    Thank you.
10            FURTHER EXAMINATION
11   BY MR. MATTHEWS:
12   Q.  Ms. Burk, congratulations, also.  I did not
13   know you were pregnant, but I do feel like I should
14   follow-up.  I asked you if you were taking any
15   medications or anything like that that would affect
16   your ability to understand my questions.  Have your
17   physical conditions, your pregnancy and physical
18   things that you've been experiencing today impacted
19   your ability to understand my questions?
20   A.  No, not really.
21   Q.  Has it impacted your memory?
22        MR. KLINGER:  Objection, form.
23   A.  I'm not sure.
24   Q.  (By Mr. Matthews) You're not sure?
25   A.  Huh-uh.

1    Q.  (By Mr. Matthews) I have no further
2    questions at this time.  Thank you, Ms. Burk.
3         MR. KLINGER:  Thank you, Matt, as well.
4    Thank you, Ms. Burk.  And of course to the esteemed
5    court reporter, thank you as well.  We will reserve
6    signature.  So you can send that however -- I imagine
7    you're ordering, Matt?
8         MR. MATTHEWS:  Yeah.
9         MR. KLINGER:  We'll take a copy of it.
10   Electronic copy, I should have clarified, Etran.
11        (Deposition concluded 2:04 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1         CHANGES AND SIGNATURE
 2  WITNESS NAME: BRITTANY BURK
 3  DATE OF DEPOSITION:  November 17, 2020
 4  PAGE LINE  CHANGE            REASON
 5  _____
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
                                    Page 146
```

```
 1             IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF TEXAS
              HOUSTON DIVISION
 3  BRITTANY BURK, on behalf of     )
    herself and others similarly    )
 4  situated                        )
     Plaintiffs,        ) Cause No.:
 5  4:19-cv-00663                    )
                                    )
 6  vs.                   )
                                    )
 7  DIRECT ENERGY, LP,              )
     Defendant.         )
 8
 9        REPORTER'S CERTIFICATION FOR THE
10      ORAL ZOOM DEPOSITION OF BRITTANY BURK
11          NOVEMBER 17, 2020
12    I, Jill M. Vaughan, Certified Shorthand
13  Reporter in and for the State of Texas, hereby
14  certify pursuant to the Federal Rules and/or
15  agreement of the parties present to the following:
16     That the witness, BRITTANY BURK, was duly sworn
17  by the officer and that the transcript of the oral
18  deposition is a true record of the testimony given
19  by the witness;
20     That the deposition transcript was duly
21  submitted on _____ to the witness or to
22  the attorney for   the witness for examination,
23  signature, and return to Veritext by
24  _____.
25     I further certify that I am neither counsel
                                    Page 148
```

```
 1      I,_____, do hereby certify
 2   that I have read the foregoing pages, and that the
 3   same is a correct transcription of the answers given
 4   by me to the questions therein propounded, except
 5   for the corrections or changes in form or substance,
 6   if any, noted in the attached Errata Sheet.
 7
 8
 9   _____
10    WITNESS SIGNATURE DATE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                    Page 147
```

```
 1  for, related to, nor employed by any of the parties
 2  in the action in which this proceeding was taken,
 3  and further that I am not financially or otherwise
 4  interested in the outcome of this action.
 5     Certified to by me on this 25th day of
 6  November 2020.
 7        Jill M. Vaughan
        Jill M. Vaughan, CSR, RPR
 8        CSR No.  6192
          Expiration date: 12-31-21
 9        Veritext Legal Solutions
          Veritext Registration No. 571
10        300 Throckmorton Street, Suite 1600
          Fort Worth, TX 76102
11        (817) 336-3042 (800) 336-4000
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                    Page 149
```

38 (Pages 146 - 149)

1  gklinger@masonllp.com
2            November 25, 2020
3  RE: Burk, Brittany, Et Al v. Direct Energy, LP
4  DEPOSITION OF: Brittany Burk (# 4336646)
5      The above-referenced witness transcript is
6  available for read and sign.
7      Within the applicable timeframe, the witness
8  should read the testimony to verify its accuracy. If
9  there are any changes, the witness should note those
10 on the attached Errata Sheet.
11     The witness should sign and notarize the
12 attached Errata pages and return to Veritext at
13 errata-tx@veritext.com.
14     According to applicable rules or agreements, if
15 the witness fails to do so within the time allotted,
16 a certified copy of the transcript may be used as if
17 signed.
18            Yours,
19            Veritext Legal Solutions
20
21
22
23
24
25
                                        Page 150

Veritext Legal Solutions
346-293-7000

A0017

# EXHIBIT 1-C

A0018

1             UNITED STATES DISTRICT COURT

           FOR THE SOUTHERN DISTRICT OF TEXAS

2                HOUSTON DIVISION

3            Case No. 4:19-cv-00663

4  BRITTANY BURK, et al.

5

          Plaintiff,

6

  v.

7

8  DIRECT ENERGY, LP,

9

          Defendant.

10

  _____/

11

12  DEPOSITION OF:     Andrew Dorko

13  DATE TAKEN:        February 23rd, 2021

14  TIME:               1:50 p.m. - 3:32 p.m.

15  PLACE:             Conducted Via Videoconference

16  TAKEN BY:          The Defendant

17  REPORTED BY:       Jenny Marmol

                      Court Reporter, Notary Public,

18                  State of Florida

19

20

21

22

23

24

25

                                 Page 1

APPEARANCES

On behalf of the Plaintiff:
   Lieff Cabraser Heimann & Bernstein
      Daniel Hutchinson, Esquire
      dhutchinson@lchb.com
      Evan Ballan, Esquire
      275 Battery Street, 29th Floor
      San Francisco, CA 94111
      (415) 956-1000

On behalf of Defendant:

   McDowell Hetherington LLP
      William B. Thomas, Esquire
      william.thomas@mhllp.com
      Elizabeth Wroblewski, Esquire
      1001 Fannin St., Ste. 2700
      Houston, Texas 77002
      (713) 337-5580

On behalf of Andrew Dorko:

   MICHAEL A. ABRAMSON, ATTORNEY AT LAW
      Michael A. Abramson
      Maabramson@abramson.com
      180 North LaSalle Street, Suite 3300
      Chicago, IL 60601
      (312) 754-7400

Also present: Todd Davis, Videographer

Page 2

I N D E X

TESTIMONY OF ANDREW DORKO

   Direct Examination by Mr. Thomas     4
   Cross-Examination by Mr. Hutchinson   67
   Redirect Examination by Mr. Thomas   77
CERTIFICATE OF OATH             80
CERTIFICATE OF REPORTER       81

* * * * * *

E X H I B I T S

Exhibit 11  Motion                38
Exhibit 12  Bates-Labeled 00121205    44

* * * * * *

S T I P U L A T I O N S

      It is hereby agreed and so stipulated
by and between the parties hereto, through
their respective counsel, that the reading and
signing of the transcript are expressly
reserved by the Deponent.

Page 3

P R O C E E D I N G S

   THE VIDEOGRAPHER:  This is the video
deposition of Andrew Dorko, on February 23rd,
'21, at the time indicated on the video
screen, which is 1:50 p.m.  This is taken
remotely via Zoom, with all parties in
agreement.  Full introduction has been waived.

   Court Reporter, please swear in the
witness and counsel introduce themselves.

   THE COURT REPORTER:  Sir, would you please
raise your right hand to be sworn?

   Do you solemnly swear or affirm that the
testimony you're about to give will be the
truth, the whole truth, and nothing but the
truth?

   THE WITNESS:  I do.

   ANDREW DORKO, having first been duly
sworn, testified as follows:

     DIRECT EXAMINATION

BY MR. THOMAS:

  Q.  Good afternoon, Mr. Dorko.

   My name is Will Thomas.

   I'm an attorney with Direct Energy.

   I appreciate you being with us today and
overcoming some early logistical challenges to join

Page 4

via Zoom.

   Mr. Dorko, you understand that you're
under oath today, correct, sir?

  A.  I'm sorry.  Did I lose everybody?

  Q.  Well, I can hear you.

  A.  Okay.  I couldn't hear anyone.

  Q.  Okay.  Mr. Dorko, you understand that
you're under oath today, correct, sir?

  A.  I do.

  Q.  Okay.  And today's proceeding is no
different than if we were in downtown Houston in
the courtroom in front of the judge and jury.  Do
you understand that, sir?

  A.  Yes, I do.

  Q.  Okay.  And Mr. Dorko, we previously took
your deposition back in November.  I'm going to go
ahead and just kind of refresh your memory on some
of the rules that will make this move a little bit
quick and easier on the court reporter, if that's
okay.

  A.  Okay.

  Q.  Okay.  Today, you know, it's a bit of an
unnatural proceeding.  The court reporter can only
take down one person talking at a time.  So I will
do my best not to talk over you, sir, and if you

Page 5

2 (Pages 2 - 5)

1   A.   That's correct.
2       MR. HUTCHINSON:  Object to form.
3   BY MR. THOMAS:
4   Q.   Mr. Dorko, after the deposition in
5   November, I believe it was either the next day or
6   two days later that TMC declared bankruptcy; is
7   that accurate?
8   A.   That's correct.
9   Q.   Okay.  You instructed your counsel to file
10  bankruptcy for TMC?
11  A.   Correct.
12  Q.   Okay.  And what is the current status of
13  TMC involving the bankruptcy?
14  A.   It's a Chapter 7.
15  Q.   The bankruptcy is still ongoing?
16  A.   Yes.
17  Q.   Okay.
18  A.   It's officially a Chapter 7.
19  Q.   What is it that you're hoping to achieve
20  through the bankruptcy?
21  A.   Quite frankly, it really wasn't my choice.
22  We had a lender that pushed it to the bankruptcy.
23  I was looking to hang on to TMC, put it into
24  Chapter 11 to reorganize and actually continue
25  running the company with Chris Bonaviti, who's been

Page 10

1   the president of the company since April of last
2   year, but they didn't give us the opportunity to do
3   that.  The lender put writs on all of our accounts,
4   wanted his money back and pushed us into Chapter 7.
5   Wasn't by our choice.
6   Q.   Who is the -- who is the lender?
7   A.   Big Elk Funding out of Arizona.
8   Q.   Mr. Dorko, what is the state of TMC today?
9   A.   It's in Chapter 7.
10  Q.   Okay.  Is -- is the business still
11  running?
12  A.   No.
13  Q.   Okay.
14  A.   It's -- we've been closed since
15  December 1st.
16  Q.   Are there any employees on the payroll?
17  A.   No, there's no -- there's no money.
18  Q.   You mentioned someone earlier who was the
19  president since April, Chris, what was his last
20  name?
21  A.   Bonaviti.
22  Q.   Can you spell that for me?
23  A.   I can.  Hold on.  I turned my phone off
24  because it interrupts our -- our conversations if
25  somebody calls me.  I know it's B-o-n -- I don't

Page 11

1   want to spell it incorrectly.  Okay.
2   B-o-n-a-v-i-t-i.
3   Q.   Okay.  Thank you, sir.  So there's no one
4   at the physical location of TMC right now; is that
5   accurate?
6   A.   No, sir, the keys were turned over to the
7   trustee.
8   Q.   Okay.  So the trustee is actually in
9   possession and in control of TMC's --
10  A.   Assets.
11  Q.   -- headquarters?
12  A.   Yes, correct.
13  Q.   Okay.  And who is the trustee?
14  A.   Emerson Noble.
15  Q.   And to your knowledge, I mean, there's no
16  telemarketing operations going on right now, is
17  there?
18  A.   No, there's not.
19  Q.   Okay.  The TMC is not providing any
20  services to any of its customers or clients right
21  now, correct, sir?
22  A.   It's completely shut down, that's correct.
23  Q.   Okay.  And Mr. Dorko, I understand that
24  November of 2020 sort of isn't the first time that
25  yourself or TMC had issues with the lender; is that

Page 12

1   correct?
2   A.   That's correct.
3   Q.   It's sort of an ongoing dispute between
4   TMC and Big Elk?
5   A.   Yes, correct.
6   Q.   Okay.  And when did that dispute begin?
7   A.   About the end of 2018.  Third quarter.
8   Q.   And what happened?
9   A.   Well, it's a long story.  I can -- I can
10  start to tell it.  I had a -- I took a sabbatical
11  in 2015 and turned it over to a gentleman that
12  worked for me, a president since 2008 or '9, George
13  Lonabaugh.  And unbeknownst to me, trusting him, he
14  misused funds, pretty much ruined TMC.  And in 2016
15  we took a $4 million loan from Big Elk Funding, and
16  we paid the payments, we paid them about
17  $1.2 million in interest over a period of '16 and
18  '17 into '18.  And then in '18, we found out that
19  George had -- George Lonabaugh had been farming
20  business out to vendors, not paying them and
21  increased salaries to certain people, individuals
22  of the company, extreme -- extreme salaries.  And
23  at that point, we couldn't pay Big Elk back and it
24  forced a -- forced a conflict.
25      We had some cooperation with them for the

Page 13

1 July of 2019, TMC is dealing with Big Elk and its
2 demands?
3    A.  Correct, right.
4    Q.  It's dealing with a receivership and its
5 control?
6    A.  Right.
7    Q.  George, at some point, the president
8 leaves the company because he's engaged in self
9 dealing and he takes the head of IT with him which
10 was Tyson Chavarie, correct?
11    A.  Correct, correct.
12    Q.  Okay.  And all of those issues, you would
13 agree with me, sir, affected normal business
14 operations, correct?
15    A.  All --
16       MR. HUTCHINSON:  Objection as to form.
17 BY MR. THOMAS:
18    Q.  I'm sorry, I'm sorry.  I didn't -- I
19 didn't hear you, Mr. Dorko.
20    A.  Yes, it started with George Lonabaugh and
21 just continued to disintegrate the company or
22 depreciate the company with Big Elk coming in.
23    Q.  Okay.  And the issues that you're talking
24 about, these are business management issues, not
25 telemarketing compliance issues, correct?

Page 18

1    A.  Correct.
2       MR. HUTCHINSON:  Objection as to form.
3 BY MR. THOMAS:
4    Q.  Okay.
5       THE COURT REPORTER:  I just want to make
6    sure --
7 BY MR. THOMAS:
8    Q.  This is how the business is being run.
9       THE COURT REPORTER:  I just want to make
10    sure that that is Mr. Hutchinson objecting.
11       MR. HUTCHINSON:  Correct.
12       THE COURT REPORTER:  Thank you.
13 BY MR. THOMAS:
14    Q.  These are issues as to how the business
15 itself is operating, correct?
16    A.  Correct.
17    Q.  Okay.  And so because the lights are all
18 turned off at TMC, it's not as if right now Direct
19 Energy or any of your current or previous clients
20 can just pick up the phone and call and say, hey,
21 can you provide these records over to us; is that
22 correct?
23    A.  That's correct.
24       MR. HUTCHINSON:  Objection as to form.
25 BY MR. THOMAS:

Page 19

1    Q.  Because there's no one there, right?
2    A.  That's correct.
3    Q.  Okay.  And right now you don't even know
4 where the records are being maintained, do you?
5    A.  No, I don't.
6    Q.  Okay.  Is -- is Patrick Crocker still
7 retained by the company?
8    A.  No, no one is.
9    Q.  Okay.  When was the last time that Patrick
10 Crocker was performing work for TMC under his
11 retention?
12    A.  Probably in I'd have to say November.
13    Q.  November of 2020?
14    A.  2020, yes, 2020 November.
15    Q.  Okay.  But even I guess before the
16 bankruptcy, there was still ongoing sort of
17 business interruption issues over at TMC, right?
18    A.  Oh, yeah.
19       MR. HUTCHINSON:  Objection as to form.
20    Asked and answered.
21 BY MR. THOMAS:
22    Q.  Okay.  And if we wanted to know about how
23 the business was operating back in 2018, 2019,
24 George Lonabaugh would be the person who would have
25 the most knowledge about those operations, right?

Page 20

1    A.  That's correct.
2    Q.  Okay.  And as it relates --
3    A.  In the beginning -- in the beginning of
4 '19, up to April --
5    Q.  Okay.  Fair enough.
6    A.  -- or July or whatever.
7    Q.  Fair enough.  And that's back when Direct
8 Energy was still doing business with TMC, correct?
9    A.  I'm not sure exactly when Direct Energy --
10 yeah, they were doing business in '18, correct, I'm
11 pretty sure.
12    Q.  Okay.  And in '19 too, correct?
13    A.  I believe so, yes.
14    Q.  Right.  And so that would have been
15 probably the -- the time that, you know, TMC would
16 be best situated to be able to provide records over
17 to Direct Energy, right?
18    A.  Correct.
19       MR. HUTCHINSON:  Objection.  Calls for
20    speculation.
21 BY MR. THOMAS:
22    Q.  Right.  And they would be able to provide
23 those records because George was still there,
24 right?
25       MR. HUTCHINSON:  Same objection.  Calls

Page 21

6 (Pages 18 - 21)

1    for the witness to speculate.
2         MR. THOMAS:  As to whether or not George
3    was there?
4    BY MR. THOMAS:
5    Q.  Mr. Dorko?
6    A.  Yes.
7    Q.  TMC would have been better situated to
8    provide records to Direct Energy back in early 2019
9    for several reasons, correct, sir?
10        MR. HUTCHINSON:  Objection, same
11   objection.
12   BY MR. THOMAS:
13   Q.  You can answer, Mr. Dorko.
14   A.  Yeah, I'm not even sure if, you know, the
15   truth is, I don't know.  That's -- I don't know
16   because I really -- I wasn't there.
17   Q.  Right.  But let's talk about a couple of
18   things.
19   A.  Okay.
20   Q.  You know that George Lonabaugh was still
21   there, correct?
22   A.  Yes, correct.
23   Q.  And you know that Tyson Chavarie was still
24   there, correct?
25   A.  That's correct, yes.

Page 22

1    Q.  Okay.  And you know that there was still a
2    contractual relationship between TMC and Direct
3    Energy at that time, correct?
4    A.  Correct.
5    Q.  Okay.  And then at some point a receiver
6    came in and took over the company and disrupted the
7    business, correct?
8    A.  Correct, correct.
9    Q.  Okay.  And then TMC has declared
10   bankruptcy, correct?
11   A.  Correct.
12   Q.  And now the lights aren't even on,
13   correct?
14   A.  Correct.
15   Q.  If my client picks up the phone and says,
16   will someone at TMC please provide us these
17   records, there's no one there to even take the
18   call, correct?
19   A.  That's correct.
20   Q.  Okay.  Thank you, sir.
21   A.  You're welcome.
22   Q.  Back in 2018 and 2019, how many employees
23   did TMC employ?
24   A.  If you're looking for an accurate number,
25   I don't know the accurate number.

Page 23

1    Q.  Okay.  Just ball park for me.
2    A.  3, 400.
3    Q.  Okay.  And what industries did TMC
4    telemarket for?
5    A.  We did -- I don't know all of them a
6    hundred percent, but I know we did a -- we did, of
7    course, Direct Energy.  We did -- we were doing
8    Sirius Radio.  We were doing a company called UMG,
9    which is some sort of subscription program and some
10   sort of a telecom voiceover IT program that I
11   remember.
12   Q.  Do you recall if Verizon was a customer?
13   A.  Verizon was a customer prior to Sirius
14   Radio.
15   Q.  Okay.  Those are both pretty big
16   companies, right?
17   A.  Yes, correct.
18   Q.  Those were pretty big accounts for TMC,
19   right?
20   A.  They were.
21   Q.  Okay.  And I understand that TMC also had
22   a bit of an energy focus; is that fair to say?
23   A.  Yes, absolutely.  In fact, that's when I
24   started with the company with energy.
25   Q.  Okay.  And some of the clients that TMC

Page 24

1    has had -- I mean, in addition to Direct Energy is,
2    like, Spark Energy, right?
3    A.  Yes.
4    Q.  Just Energy, right?
5    A.  I don't know for sure.
6    Q.  Okay.  USG&E?
7    A.  Yes, for sure.
8    Q.  Santana Energy Services?
9    A.  Absolutely.
10   Q.  Okay.  Clearview Energy, right?
11   A.  That, I don't know.
12   Q.  Okay.  But again, those are also pretty
13   big companies, right, sir?
14   A.  Absolutely.
15   Q.  Important accounts for TMC?
16   A.  They were.
17   Q.  Okay.  Direct Energy -- in other words,
18   Direct Energy was not the only energy customer that
19   TMC had, right?
20   A.  That's correct.
21   Q.  And TMC at no point during Direct Energy's
22   relationship with it, was TMC a captive agent,
23   correct, sir?
24   A.  No.
25   Q.  Okay.  No, I'm not correct or no --

Page 25

7 (Pages 22 - 25)

Page 78

```
 1   Thursday?
 2        THE COURT REPORTER:  I'll do my best.
 3        MR. THOMAS:  And then if I can just get
 4   a -- I mean, if I can get rough too, if you
 5   can't do that, then that would be ideal.  We
 6   have some filings due Friday.
 7        THE COURT REPORTER:  Okay.  Do you need a
 8   copy, Mr. Hutchinson?
 9        MR. HUTCHINSON:  Yes, I would like a copy.
10   I don't know that we're going to need it
11   rushed, though.
12        THE COURT REPORTER:  Okay.  Mr. Abramson?
13        MR. ABRAMSON:  I do not need a copy.
14        THE COURT REPORTER:  Okay.  Is there
15   anybody -- and that's it for this, right?
16        MR. THOMAS:  Yes, ma'am.
17        THE COURT REPORTER:  Okay.
18        MR. HUTCHINSON:  Just -- one, just for
19   Will, I recall that when we were doing this
20   the last time around, the judge had said that
21   he did not mind if the deposition went in
22   without sort of all the bells and whistles.
23   And so I assume that the same would hold here.
24   Just for your knowledge.  We're not -- we
25   won't have an objection if you put in a rough
```

Page 79

```
 1   or you need to put in something that's not a
 2   hundred percent complete and we can get the
 3   final one in at some later date.  Just wanted
 4   to know so you didn't get jammed up in any
 5   fashion unnecessarily.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 80

```
 1              CERTIFICATE OF OATH
 2   STATE OF FLORIDA
     COUNTY OF ORANGE
 3
 4        I, JENNY MARMOL, Shorthand Reporter
 5   and Notary Public, State of Florida, certify that
 6   ANDREW DORKO, appeared before me, via
 7   videoconference, on 2/23/2024, and was duly
 8   sworn/affirmed and produced a Florida driver's
 9   license as identification.
10        WITNESS my hand and official seal
11   this 25th day of February, 2021.
12
13
14        JENNY MARMOL
          Notary Public - State of
15        Florida
          Commission No. HH 38979
16        Expires:  9/2/2024
17
18
19
20
21
22
23
24
25
```

Page 81

```
 1            CERTIFICATE OF REPORTER
 2   STATE OF FLORIDA
     COUNTY OF ORANGE
 3
 4        I, JENNY MARMOL, Shorthand Reporter and
 5   Notary Public, CERTIFY that I was authorized to and
 6   did stenographically report the deposition of
 7   ANDREW DORKO; that a review of the transcript was
 8   requested: and that the foregoing transcript,
 9   Pages 4 through 79, is a true and accurate record
10   of my stenographic notes.
11        I FURTHER CERTIFY that I am not a
12   relative, or employee, or attorney, or counsel of
13   any of the parties, nor am I a relative or employee
14   of any of the parties' attorneys or counsel
15   connected with the action, nor am I financially
16   interested in the action.
17        DATED this 25th day of February, 2021.
18
19
20
21
22        JENNY MARMOL
23
24
25
```

21 (Pages 78 - 81)

# EXHIBIT 1-D

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF TEXAS

3                         HOUSTON DIVISION

4    BRITTANY BURK,                       .
                                          .
5              Plaintiff,                 .
                                          .  Civil Action
6    VS.                                  .  No. H-19-CV-663
                                          .
7    DIRECT ENERGY, LP,                   .  Houston, Texas
                                          .  December 9, 2020
8                                         .  10:56 a.m.
               Defendant.                 .
9    . . . . . . . . . . . . . . . . . .

10            TRANSCRIPT OF PROCEEDINGS (HELD REMOTELY)

11          BEFORE THE HONORABLE GEORGE C. HANKS, JR.

12                    PRE-MOTION CONFERENCE

13   APPEARANCES:

14   FOR THE PLAINTIFF:

15          Mr. Daniel M. Hutchinson
            Mr. Evan J. Ballan
16          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
            275 Battery Street
17          29th Floor
            San Francisco, California 94111
18          415.956.1000
            dhutchinson@lchb.com
19          eballan@lchb.com

20          Mr. Gary M. Klinger
            MASON, LIETZ & KLINGER, LLP
21          227 W. Monroe Street
            Suite 2100
22          Chicago, Illinois  60606
            312.283.3814
23          FAX:  773.496.8617
            gklinger@masonllp.com
24

25       PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS REMOTELY,
       TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

```
 1                        APPEARANCES

 2                        (continued)

 3   FOR THE DEFENDANT:

 4           Mr. Michael D. Matthews, Jr.
             MC DOWELL, HETHERINGTON, LLP
 5           1001 Fannin
             Suite 2700
 6           Houston, Texas 77002-6707
             713.337.5580
 7           FAX:  713.337.8850
             matt.matthews@mhllp.com
 8

 9

10

11

12

13

14   COURT REPORTER:

15           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8004
16           Houston, Texas  77002
             713.250.5582
17

18

19

20

21

22

23

24

25
```

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1                      PROCEEDINGS
 2                   December 9, 2020
 3           THE COURT:  Good morning, everyone.  The next case on
 4  the Court's docket is Cause Number 4:19-CV-663, Burk versus
 5  Direct Energy.
 6                Can counsel on the line just introduce themselves
 7  to the Court and state the parties they represent starting with
 8  the Plaintiffs.
 9           MR. HUTCHINSON:  Yes.  Good morning, your Honor.  This
10  is Daniel Hutchinson of Lieff, Cabraser for the Plaintiff.  My
11  colleague Evan Ballan, also Lieff, Cabraser, is on my line, as
12  is my colleague Gary Klinger.
13           THE COURT:  Okay.  Welcome, everyone.
14                And for the Defendant?
15           MR. MATTHEWS:  Good morning, your Honor.  This is Matt
16  Matthews for the Defendant, Direct Energy.
17           THE COURT:  Great.
18                Welcome, everyone.  I received the request for
19  pre-motion letter, the pre-motion request letter; and I've read
20  all the attachments.  I've read all of the arguments.  And
21  here's the problem that I have with this case and what's going
22  on here, and I just wanted to be perfectly candid with you-all.
23                I mean, I've -- the problem is is that the
24  deadline for amending the pleadings and adding parties has
25  passed; and from reading all the materials under Rules 15 and
```

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   16, there's no good cause to amend the complaint to add an

2   additional Plaintiff at this point in time.

3            I read the arguments regarding what Defendants

4   allegedly did.  Respectfully, Mr. Hutchinson, I completely

10:57:35   5   disagree.  There is no sandbagging here.  It's your Plaintiff.

6   You either know or should know your Plaintiff's qualifications

7   to be class representatives.

8            It wasn't Mr. Matthews' or the Defendant's

9   responsibility to tell you that.  You should have been telling

10:57:50   10  them about the Plaintiff's qualifications to serve as a class

11  representative in this case.  So, I mean, obviously, you can

12  file your motion; and you need to file it under Rules 15 and 16,

13  which is what governs here.

14            Rules 15 and 16 govern the amendment of the

10:58:13   15  docket control order to add parties.  That date has passed, and

16  you have to show good cause.  In looking at this, there is no

17  good cause for amending the complaint at this time.  Good cause

18  under Rule 15 is not -- it's not -- it's good cause, excusable

19  -- it's got to be not a mistake, and it's got to be excusable

10:58:38   20  neglect.

21            And in this case, I don't see how there's

22  excusable neglect.  I mean, you can file the motion, no

23  question; but I don't see how there's excusable neglect because

24  it's your Plaintiff.  You know what her qualifications are or

10:58:52   25  not.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

**A0029**

1              So, I'll listen to argument today, you know,

2    about the issue.

3              But I really think that, Mr. Hutchinson, you need

4    to go ahead and file your motion.

10:59:01   5              Mr. Matthews, you get to respond to it.

6              But honestly, if this is everything that you guys

7    are going to present to me, there's no sandbagging by the

8    Defendants; and the Plaintiff -- it's your Plaintiff.  You know,

9    it's sort of like you dance with who you brought -- who you

10:59:20   10   brought to the dance.

11             I mean, this is your Plaintiff.  You understand

12   her -- her assets and liabilities as a -- for a class

13   representative; and the other class representative you're

14   thinking about joining at this point, this isn't somebody who

10:59:39   15   just popped up.  Everybody knows about Ms. Young.  She could

16   have been added at any time if you thought that the current

17   Plaintiff wasn't appropriate.

18             So, I'll hear from the parties; but I think the

19   motion needs to be filed; and we need to hear why under Rule 15

10:59:57   20   and 16 the docket control order should be amended.

21             And anyone can speak.

22             Mr. Matthews.

23             Mr. Hutchinson.

24             I mean, am I --

11:00:08   25        MR. HUTCHINSON:  Yes, your Honor.  Yes, your Honor.

1   If I may be heard briefly, your Honor, on those topics.  So, we

2   agree that the questions are, one, should the Plaintiff be

3   permitted to add or substitute another class representative?

4   And two, if so, what is the timing of that?

11:00:26   5         And so, I can briefly address the first issue,

6   should the Plaintiff be allowed to move for this relief.  And I

7   would like to unpack the second issue just a little bit because

8   that's something that the Defendant had brought up that we

9   haven't yet addressed in our papers.

11:00:41   10         So, as to the baseline issue, as we cited to a

11   few cases in our papers -- and we can flesh this out more fully

12   if we -- when we file the motion.  It's quite common for class

13   representatives to be replaced at various stages of litigation.

14   As you can imagine, people get deployed for the armed services.

11:01:02   15   People may die.  They may become ill.  They may have to take

16   care of someone else.  There's a whole host of ranges -- a range

17   of reasons why someone may no longer be able to proceed as a

18   class representative.

19         And Courts frequently find that the most

11:01:17   20   efficient way to deal with that is to have a substitute

21   Plaintiff.  The alternative to that is that the new person could

22   just go ahead and file another case.

23         And here, Ms. Young could file another case at

24   any time.  We think that would be far less efficient than

11:01:33   25   proceeding in the same case where the parties have already done

Gayle Dye, CSR, RDR, CRR - 713.250.5582

A0031

1  -- I've got a little experience with this.  Rule 21 -- when
2  you're substituting class Plaintiffs -- class representatives
3  under Rule 21, it's really in a situation where a class member
4  is -- the class representative is no longer able, for whatever
11:12:25  5  reason, to serve as a class representative, not that they're no
6  longer suited to be a class representative or never were suited
7  to be a class representative.
8              So, I need to hear the -- I mean, I need to hear
9  the evidence.  I need to get the briefing on that.  So, with all
11:12:42  10  due respect to everyone's position, I'm not staying anything.
11  Everything is before me.  The parties respond.  If you want a
12  motion to substitute the -- a new Plaintiff, you can file that.
13              It needs to be responded to, and I'll consider --
14  once the motions are all before me, I'll figure out which one I
11:13:02  15  need to decide first and move forward from there.
16              I understand the efficiency argument,
17  Mr. Matthews; but that is an argument that is in response to the
18  motion to -- to add a new party, that is, "Judge, you have a
19  docket control order in place.  We started briefing this.
11:13:23  20  Plaintiff wanted to brief it.  You know, it's inefficient use of
21  resources at this point to add a new Plaintiff."
22              You can make all those arguments if you want to
23  in your response.  I know that it seems inefficient, but I don't
24  know a better way to do it that's fair to both sides.
11:13:37  25              So, Mr. Hutchinson, you file whatever motions you

1          THE COURT:  Great.  Okay.  Well, I'll let you go.

2   Thanks --

3               I'm sorry.  Mr. Matthews.

4          MR. MATTHEWS:  Sorry.  One other question I almost

11:20:47  5   forgot.  It's mentioned in our letter response that -- the fact

6   that Ms. Burk refused to answer some questions about her

7   criminal history; and if we are going to be going forward with

8   briefing on Ms. Burk as the class representative, I would like

9   an opportunity to agree to depose her on just those issues.

11:21:03  10          THE COURT REPORTER:  I'm sorry, you faded out again.

11          MR. MATTHEWS:  I'm sorry, I'm too far away.

12               I cautioned her during the deposition that, if

13   she didn't answer those questions, that I would ask for

14   permission to redepose her.  We took a break.  We came back,

11:21:26  15   asked more questions, cautioned her again.  She still refused to

16   answer.  She said, "I'll do it if the judge says I have to."

17               So, I'm requesting a chance -- these issues

18   certainly go to her adequacy, and she refused to provide answers

19   on some of these matters.  So, I don't think it would take more

11:21:45  20   than -- much time at all.  We can do it by Zoom again.  I'm not

21   asking for her to pay for it or anything like that --

22          THE COURT REPORTER:  I'm sorry, you're not asking for

23   what?

24          MR. MATTHEWS:  For her to pay for it, you know, or any

11:21:57  25   sort of sanction.  But I think these -- we can all agree these

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   are relevant issues or we wouldn't be having this discussion,

2   and I would like the chance to ask her those questions.

3   THE COURT:  Mr. Hutchinson, your position.

4   If you're going to be moving to substitute her --

11:22:19   5   possibly substitute her as class representative, the Defendants

6   need the opportunity to depose her and find out whether or not

7   she's suited.

8   MR. HUTCHINSON:  We would agree to that.  Without

9   knowing the questions, I can't speak to the specific questions;

11:22:33   10   but by way of background and without saying anything that's

11   attorney-client privilege, this was an area of surprise for

12   counsel and an area that I understand of potential embarrassment

13   for the Plaintiff.

14   And so, it was unexpected at the time.  We have

11:22:51   15   no objection, though, to answering those questions now that we

16   understand the issues; and we can speak to Ms. Burk.  As long as

17   there's not -- they go beyond the pale that I'm not aware of, we

18   have no objection to having the deposition be completed in that

19   fashion.  Thank you, your Honor.

11:23:07   20   THE COURT:  So, Mr. Matthews, if you can set that up.

21   If there's a problem, let me know.  I'll stand by; and if you

22   think there's going to be a problem, let me know ahead of time

23   when the deposition is; and I'll stand by, you know, on Zoom.

24   Just -- actually, why don't you just -- just

11:23:25   25   prophylactic -- I know that it's going to be fine -- why don't

1   you provide Ms. Clair who is my case manager the Zoom

2   information for the deposition; and that way, I'll have it.  And

3   all you need to do, if there's a problem, is shoot Ms. Clair an

4   e-mail and say, "We're having a problem.  Judge, can you check

11:23:48   5   in for a second."  I will be happy to do that.

6            I'll be in -- I'm starting a month-long Zoom

7   trial tomorrow, a bench trial, in a Lanham Act case which will

8   take awhile, so I'm going to be available.  It's not like I'm

9   going anywhere.  So, just let me know if there's an issue; and I

11:24:10   10   can just cut the feed from my trial and jump in and answer any

11   questions you have.

12            But just go ahead -- as part of your letter with

13   the briefing schedule and deadlines, just let Ms. Clair -- if

14   you know at this time, let Ms. Clair know what the date for the

11:24:26   15   deposition is and the Zoom information; and if not, then, when

16   you do get the Zoom information, just provide it to Ms. Clair;

17   and we're good.

18            MR. MATTHEWS:  Thank you, Judge.

19            There's one other issue that I don't think needs

11:24:40   20   the Court's attention today, but I want to flag it as a

21   potential issue down the road.  When we had our last hearing,

22   one of the issues related to deposing the corporate

23   representative of TMC who is the third-party Defendant in this

24   case; and the parties had, after speaking to TMC, agreed to

11:25:00   25   conduct that deposition on a half day on Monday, the 23rd, and

1   another half day on Monday, the 30th.

2            What we agreed to was that Plaintiff's questions

3   would be on the first half; Defendant's on the second.

4   Plaintiff has probably, I would say, a different view of that;

11:25:17   5   but that's my position.

6            The deposition went forward on the 23rd; and

7   then, on November 25th TMC filed bankruptcy.

8            THE COURT:  Ah.

9            MR. MATTHEWS:  We did not proceed with the deposition

11:25:32   10  on the 30th.  Plaintiff's position is that I unilaterally

11  canceled it.  It's my position that the automatic stay applied;

12  and I was not able to go forward with it, whether I wanted to or

13  not.

14            We are in the process of seeking to lift the stay

11:25:49   15  in the Court where TMC has filed bankruptcy so that we can

16  conduct that deposition.  I'm hopeful that we'll be able to do

17  it in sufficient time where we can depose TMC before we have to

18  file our opposition to class certification.

19            So, I'm not seeking an extension of that at this

11:26:06   20  time; but I don't have complete control over that; and I don't

21  want -- I just want to flag it for the Court in case it's an

22  issue that comes up later.  I don't want you to say, "Why didn't

23  you tell me about that?"

24            THE COURT:  I completely understand.  It's dually

11:26:22   25  noted.  So, if there's an issue, I know that it's because TMC

1   filed bankruptcy; and you know, it might take a little bit

2   longer.  So, that's definitely good cause for an extension, you

3   know, to some deadlines to get the briefing done.

4           So, if that happens, let me know.  Hopefully,

11:26:41   5   you'll be able to work around it.  But if that's an issue, let

6   me know; and we'll work with it.

7           MR. MATTHEWS:  Thank you, Judge.

8           THE COURT:  Mr. Hutchinson, anything on your side that

9   you anticipate might be a problem or might need my help?

11:26:56   10          MR. HUTCHINSON:  No, your Honor.  That's all the

11   Plaintiff has at this time.  Thank you.

12          THE COURT:  Okay.  Well, all of you take care.  Happy

13   holidays.  I look forward to receiving your letter soon.  If

14   there's any problems, just let me know.  Hopefully, you'll get

11:27:12   15   together and set a briefing schedule since you're -- you know

16   where each other are -- you know where each other are right now.

17   So, call each other, set up a briefing schedule, get that on

18   file by -- I think I said Friday -- close of business on Friday.

19   Get that done; and then, we'll keep moving forward.

11:27:29   20          Okay.  Thanks again, everyone.  Good afternoon.

21          MR. MATTHEWS:  Thank you, your Honor.

22          MR. HUTCHINSON:  Thank you, your Honor.

23          THE COURT:  Take care.

24      (Proceedings concluded at 11:27 a.m.)

25

Gayle Dye, CSR, RDR, CRR - 713.250.5582

**A0037**

26

C E R T I F I C A T E

1

2

3        I certify that the foregoing is a correct transcript
4    from the record of proceedings in the above-entitled matter, to
5    the best of my ability.
6        This record was taken through video or telephone
7    conference which may have affected the quality of the record.

8

9    By: /s/*Gayle L. Dye*                    *12-16-2020*
10        Gayle L. Dye, CSR, RDR, CRR        Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 1-E

A0039

1     **IN THE UNITED STATES DISTRICT COURT**
      **FOR THE SOUTHERN DISTRICT OF TEXAS**
2       **HOUSTON DIVISION**

3 BRITTANY BURK    )   NO. 4:19-CV-663
            )
4            )
 VS.         )   Houston, Texas
5            )   12:28 p.m.
            )
6 DIRECT ENERGY, LP, ET AL  )   DECEMBER 21, 2020

7

8  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

9         **ZOOM HEARING**

10   **BEFORE THE HONORABLE GEORGE C. HANKS, JR.**

11     **UNITED STATES DISTRICT JUDGE**

12       **VOLUME 1 OF 1**

13

14  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

15 APPEARANCES:

16 FOR THE PLAINTIFF:

17   Mr. Gary M. Klinger
    Mason Lietz & Klinger LLP
18   227 W. Monroe Street
    Suite 2100
19   Chicago, Illinois  60606
    Tel:  312-283-3814
20   Email:  Gklinger@masonllp.com

21   Mr. Daniel M. Hutchinson
    Lieff, Cabraser
22   275 Batter Street, 29th Floor
    San Francisco, California  94111
23   Tel:  415-956-1000
    Email:  Dhutchinson@lchb.com
24

25

1 FOR THE DEFENDANT DIRECT ENERGY, LP:

2         MR. Michael D. Matthews, Jr.
          Mr. William Benjamin Thomas
3         McDowell Hetherington, LLP
          1001 Fannin Street
4         Suite 2700
          Houston, Texas  77002
5         Tel:  713-337-5580
          Email:  Matt.matthews@mhllp.com
6                 William.thomas@mhllp.com

7 COURT REPORTER:

8         Ms. Kathleen K. Miller, CSR, RMR, CRR
          515 Rusk, Room 8004
9         Houston, Texas  77002
          Tel:  713-250-5087

10
   Proceedings recorded by mechanical stenography.
11 Transcript produced by computer-assisted transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
         1              P R O C E E D I N G S
         2         THE COURT:  Okay, everyone, the next case on
         3  the Court's docket is Cause Number 4-19-CV-663, Burk vs.
         4  Direct Energy.  Can counsel on the line just introduce
12:28:55 5  themselves to the Court and state the parties they
         6  represent, starting with the plaintiffs?
         7         MR. KLINGER:  Good morning, Your Honor.  Gary
         8  Klinger on behalf of plaintiff, Brittany Burk.
         9         THE COURT:  Okay.
12:29:07 10        MR. KLINGER:  And I am joined --
         11        MR. HUTCHINSON:  Sorry.  Mr. Klinger was going
         12 to introduce me as well.  Daniel Hutchinson also here for
         13 the plaintiff.
         14        THE COURT:  Great.  And for defendant?
12:29:20 15        MR. MATTHEWS:  Your Honor, this is Matt
         16 Matthews for Direct Energy and also with me is my colleague
         17 Will Thomas.
         18        THE COURT:  Great.  Welcome, everyone.
         19        I have now received the transcript.  I
12:29:30 20 know it is not perfect, but I understand what was asked.
         21 So it seems like the first dispute you guys have is whether
         22 or not this needs to go by telephone or by videotape.  This
         23 definitely needs to go by videotape.  No question about it.
         24        Credibility is at issue with this witness.
12:29:48 25 I'm sorry, but I think I remember every time I have been
```

1  arrested, you know, that's kind of one of those things that

2  you just know about.  And I remember exactly how many times

3  I was arrested.

4               It's got to be by video.  This witness's

12:30:04   5  credibility is paramount, and if she is not available, the

6  jury needs to be able to figure out a way to determine her

7  credibility.  So it is going to be by video.  I mean,

8  that's the bottom line.

9               Now, the question then becomes when do you

12:30:18   10  finish the deposition?  It sounds like Ms. Burk doesn't

11  have an Internet connection.  I am not really sure.  Is

12  there a way you guys can work around that to get her an

13  Internet connection and get her taken care of?

14               MR. KLINGER:  Yes, Your Honor.  As I

12:30:36   15  understand, Ms. Burk doesn't have a computer so she borrows

16  one for the deposition.  And so last time she made

17  arrangements to appear for the deposition.  This time she

18  made arrangements to appear for the deposition.  The

19  Internet just conked out on her.

12:30:56   20               So she will need to make arrangements

21  again, and so I -- it just might be a few days until she

22  can make appropriate arrangements to borrow a computer and

23  make sure she is at a place where she can have peace and

24  quiet and do the deposition.

12:31:12   25               THE COURT:  Okay.  You know, I think you can

9

1 (Concluded at 12:36 p.m.)

2

3                    COURT REPORTER'S CERTIFICATE

4      I, Kathleen K. Miller, certify that the foregoing is a

5 correct transcript from the record of proceedings in the

6 above-entitled matter.

7

8 DATE: Jan. 13, 2021        /s/     _Kathleen K. Miller

9                            Kathleen K. Miller, RPR, RMR, CRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A0044